**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **STEPHEN BARBEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 4:22-cv-3684** |
| vs. | § | |
| **BRYAN COLLIER,** Executive Director, | § | |
| Texas Department of Criminal Justice | § | |
| Huntsville, Texas | § | |
| | § | |
| **BOBBY LUMPKIN,** Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | **(Death Penalty Case)** |
| Division, Huntsville, Texas | § | |
| | § | |
| **KELLY STRONG,** Senior Warden, Texas | § | **Mr. Barbee is scheduled to be** |
| Department of Criminal Justice, | § | **executed on November 16, 2022** |
| Huntsville Unit, | § | |
| Huntsville, Texas, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S BRIEF IN RESPONSE TO COURT ORDER

**A. Introduction.**

     Plaintiff Stephen Barbee is scheduled to be executed on November 16, 2022.[1] On October

25, 2022, he filed in this Court a complaint under 42 U.S.C. § 1983, for violations and threatened

violations of his rights secured by the United States Constitution under the Eighth and Fourteenth

Amendments and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

---

[1] *See* Docket Entry No. 1, Appendix 1. Barbee's date was set by the state trial court on August 12, 2022, which gave him only 96 days to prepare for his execution, barely more than the statutory minimum 91 days.

("Complaint Pursuant to 42 U.S.C. § 1983," Docket No. 1) (hereafter, "Complaint").[2] On November 2, 2022, Barbee filed a motion for stay of his execution. (Docket Entry No. 4). On November 3, 2022, this Court ordered Barbee to file a brief addressing five issues:

1) Barbee's statement that he has been without appointed counsel since 2019, except for clemency proceedings, and "how this argument is in keeping with his duty of candor to the Court;"

2) Barbee must show "why this case is not subject to dismissal because he waited to file suit until twenty-two days before his execution;"

3) Barbee "must divulge the results of that [Step 2 grievance] process or describe why he filed suit before concluding the grievance process;"

4) "Barbee must show cause why his ADA claim is not subject to dismissal for failing to allege a valid ground for relief;"

5) "Barbee must show cause why his Eighth Amendment claim is not subject to dismissal for not providing more detailed information about how, with the current configuration in the death chamber, TDCJ could modify its process to meet his requested accommodations."

(Order at 2-3).

## 1. Barbee "has been without appointed counsel since early 2019, except for clemency proceedings." (Order at 2, referencing Complaint, par. 25, p. 8)

Undersigned counsel believes he has been completely candid with the Court in regard to this representation.

### a. Barbee has been without appointed state court counsel since well prior to 2019.

---

[2] Accompanying that complaint were motions and proposed orders for Mr. Barbee to proceed *in forma pauperis* and for undersigned counsel to appear *pro hac vice*. (Docket Entry Nos. 1-2, 1-3). Barbee also has an ongoing religious rights lawsuit pending in this Court. *Barbee v. Collier*, 4:21-cv-03077 (S.D. Tex.)

Undersigned counsel A. Richard Ellis was first appointed to represent Mr. Barbee on May 11, 2009, under 18 U.S.C. § 3599, in the Federal District Court for the Northern District of Texas. *Barbee v. Quarterman*, Case No. 4:09-cv-074-Y (ECF No. 9).[3] In state court, undersigned counsel has been appointed only for the subsequent writ proceedings and evidentiary hearing held in the state trial court in 2013. Mr. Barbee has been without counsel appointed in state court since then.

After denial of Mr. Barbee's federal habeas case and the setting of his first execution date in October of 2019, undersigned counsel motioned the federal district court for appointment in Mr. Barbee's state court post-conviction proceedings, but that motion was denied. As the federal district court stated in its "Memorandum and Order Dismissing Motion to Authorize Attorney Fees,"

> [t]he Supreme Court has concluded that 18 U.S.C. § 3599 authorizes appointments made in connection with representations in state clemency proceedings. *See Harbison v. Bell,* 566 U.S. 180, 184-94 (2009) (holding Section 3599 authorizes appointment by federal courts of counsel to represent state prisoners challenging their death sentences in state clemency proceedings).
> *Barbee v. Davis*, No. 4:09-cv-074-Y (ECF. No. 107), Memorandum and Order of August 30, 2019 at 1.

Hence, undersigned counsel was and remains appointed for Mr. Barbee only for any further federal proceedings in that court and state clemency proceedings under undersigned counsel's current § 3599 appointment. The federal district court also held

> The State of Texas charged Petitioner with capital murder. The State of Texas tried and convicted Petitioner for that offense. The State of Texas is now seeking to execute Petitioner. Under such circumstances, it is only reasonable to expect the State of Texas to bear the burden of underwriting Petitioner's legal representation in a State court proceeding.
> *Id*. at 2.

---

[3] The Federal Public Defender for the Western District of Texas, Capital Habeas Unit was appointed as federal co-counsel in 2019, by the federal district court for the Northern District of Texas, solely for clemency proceedings, as undersigned counsel was informed that their remit does not extend to state court proceedings aside from clemency.

The federal district court added that availability of federal funding "requires a good faith effort by counsel to obtain state funding for legal representation in state court." *Id*. at 3. The state post-conviction appointment was denied by the federal district court as "there is no allegation the federal habeas petitioner has sought state funding for legal representation in state court." *Id*.

Pointing out that Sections 6(b-1) and (b-2) of Tex. Code Crim. Pro Art. 11.071 provide a mechanism for authorization of funding, the federal district court reiterated that "[l]ogic dictates that, before seeking federal funding as 'reasonably necessary' under § 3599, a federal habeas petitioner's counsel who wishes to file a state subsequent application must first...request appointment and funding under Sections 6(b-1) and 6(b-2)." *Id*. The federal district court, in denying the motion for appointment, *Id*. at 4, left it up to the state courts to provide representation for Mr. Barbee.

Mr. Barbee then moved in state court for appointment. Facing an execution date in October of 2019, Mr. Barbee moved the Texas Court of Criminal Appeals (hereafter, "CCA") on August 6, 2019 that undersigned counsel be appointed. *See* Barbee's subsequent writ application (at page 64), *Ex parte Barbee*, WR-71,070-03. No ruling was made on that motion. Mr. Barbee's execution was stayed on September 23, 2019. *Ex parte Barbee*, 2019 WL 4621237 (Tex. Crim. App. Sept. 23, 2019). Further briefing ensued on questions posed by the CCA. On February 10, 2021, the CCA issued an opinion denying Mr. Barbee's application. *Ex Parte Barbee*, 616 S.W.3d 836 (Tex. Crim. App. 2021).

During this time, 2019-2021, Mr. Barbee continued to be without appointed counsel in his state court proceedings. No requests for compensation were submitted to the state courts for this work. On July 6, 2021, the trial court, the 213th Judicial District Court of Tarrant County, set an

October 12, 2021 execution date for Mr. Barbee. On July 20, 2021 Mr. Barbee filed a renewed motion for appointment in that court. No ruling has been made on that motion. On August 24, 2021, Mr. Barbee submitted a second renewed motion for appointment of counsel in the trial court. That motion was unopposed by the State. It was filed in light of the lack of action on the previous motion and the recent Fifth Circuit Court of Appeals opinion in *Storey v. Lumpkin*, 8 F.4th 382, 393 (5th Cir. 2021), which held that "successive state habeas proceedings...are outside the scope of counsel's federal appointment pursuant to [18 U.S.C.] §3599." No ruling has been made on that motion either.

Hence, undersigned counsel has to date reasonably assumed that ongoing state court proceedings, except for clemency, are not covered by his federal appointment. Had he assumed otherwise, he would have applied for compensation. He has not done so. Should this Court find that this assumption was mistaken, as the Court's Order seems to indicate (Order at 2), undersigned counsel will request compensation. Thus, Barbee has been without state court appointed counsel since at least 2019, as he has represented to this Court.

### b. Barbee has been without appointed federal court counsel, except for clemency, since 2019 and prior.

Undersigned counsel has not been appointed in this matter or in his ongoing religious rights lawsuit pending in this Court. *Barbee v. Collier*, 4:21-cv-03077 (S.D. Tex.).[4] Consequently, he has not requested compensation. Undersigned counsel has also assumed that his appointment in the Northern District of Texas, in a separate action which has since been closed, does not encompass his

---

[4] In that matter, Tivon Schardl of the Federal Public Defender's Office, Western District of Texas is listed on the docket sheet as representing Mr. Barbee; however that representation encompassed only helping undersigned counsel file a motion opposing Defendants' proposed briefing schedule (Docket Entry No. 27) in May, 2022, when undersigned was unable to do so due to his medical issues and hospitalization.

recent work in this Court, the Southern District of Texas, on these actions. Had he so assumed, he would have requested compensation for actions outside clemency, which he has not. Should this Court find that this assumption was mistaken, as the Court's Order seems to indicate, undersigned counsel will request compensation.

Undersigned counsel has represented Mr. Barbee in state and federal court actions, in the state trial court, the Texas Court of Criminal Appeals, the United States Supreme Court and this Court, without appointment or compensation, except for clemency, for at least the last three years. This has been a substantial financial burden on undersigned counsel, a solo practitioner, who does not receive a salary from a law firm, the government, a non-profit, or a public defender organization. It has also been a source of considerable stress, as undersigned counsel is still recovering from a heart attack, triple-bypass surgery with ensuing complications, and almost a month in the hospital, having been released only in May of this year.

As shown above, undersigned counsel believes he has been completely candid with the Court regarding this representation.

**2. "Barbee must show cause why this case is not subject to dismissal because he waited to file suit until twenty-two days before his execution" (Order at 2).**

Mr. Barbee's case is not subject to dismissal because he filed it too late.

**a. The deterioration in Mr. Barbee's physical condition is relevant to his Eighth Amendment and ADA claims and could not have been alleged with specificity until an execution date was pending.**

While Mr. Barbee (and the Defendants, TDCJ) have known about his physical impairments for some time, his physical condition is naturally fluid and changes over time. His physical abilities have recently deteriorated quite significantly, due to the passage of time, ageing, and the conditions

of his confinement. While Mr. Barbee has been aware of his own medical condition for many years, and has anticipated an execution date, he has made diligent efforts to ascertain whether TDCJ would provide accommodations for his disabilities and protect his Eighth Amendment rights. Prior to his October 12, 2021 execution date, which this Court stayed, Mr. Barbee put the Defendants on notice that attempting an execution according to a protocol that required him to lie on a gurney with his arms outstretched and his palms facing upward could cause extreme pain and suffering in violation of Barbee's Eighth Amendment right to be free of cruel and unusual punishment. *Ex parte Barbee*, 2021 WL 4713629 (Tex. Crim. App. Oct 8, 2021) at *1.

With respect to the current execution date of November 16, 2022, Mr. Barbee timely sought to inform TDCJ officials of the deterioration of his condition. Again, his efforts met with no response. (*See* Complaint, Appendix 8, grievances submitted). Given the immediacy of his execution date and with no indication that a response from TDCJ through administrative channels would be forthcoming, Mr. Barbee had no choice but to turn to the courts, and he filed a § 1983 suit seeking accommodations under the ADA for his physical impairments (his range-of-motion impairment/immobility) and asserting his right not to be subjected to cruel and unusual punishment.[5]

**b. Mr. Barbee timely sought to exhaust administrative remedies prior to the filing of the lawsuit.**

Mr. Barbee's efforts to exhaust administrative remedies prior to the filing of this lawsuit, detailed more fully in the following section, is an important indication that he did not sleep on his rights, but rather sought diligently to assert them in the face of a pending execution date. Mr. Barbee

---

[5] That lawsuit also faced problems with funding the evaluation by Dr. Pamela Blake conducted this year. Funding was requested from clemency co-counsel the Federal Public Defender but it could not be provided until September, and Dr. Blake was sent to do the evaluation as soon as possible after she was retained.

initiated the process of seeking accommodations for his disability with respect to his November 16 execution date on July 9, 2021. (*See* Complaint, Appendix 8.) As detailed below, Mr. Barbee filed no fewer than five grievances through TDCJ's administrative protocol between July 9 and September 29, explaining that he would be subjected to extreme pain and suffering if he were executed according to what he understood to be the standard protocol for lethal injection, which would require him to lie with his arms extended and palms facing up. There was no delay between the setting of an execution date in this case and Mr. Barbee's initiation of the grievance process; in fact, he initiated the process on July 9. Instead, Barbee's execution date was set in bad faith while a federal stay was in place and his counsel had only recently recovered from a heart attack and a lengthy hospitalization. Barbee has sought to assert his right to be free from cruel and unusual punishment due to his arm-immobility and range-of-motion impairments diligently throughout the process of challenging the setting of the execution date and protecting his religious rights to spiritual accompaniment under the First Amendment and the RLUIPA.

Upon information and belief, Mr. Barbee's counsel understands that TDCJ is aware of Mr. Barbee's disability and comprehends that it renders it impossible for him to straighten his arms and lie with his palms facing upward. Mr. Barbee's counsel understands that representatives from TDCJ have met with Mr. Barbee, had conversations with him about his disability, and even taken photographs--presumably to document his disability for the purpose of making arrangements to execute him by lethal injection. In light of these actions, TDCJs refusal to respond to Barbee's administrative grievances is all the more inexplicable and suggests that any delay in bringing to this Court's attention the potential Eighth Amendment violation and the ADA claim is fairly placed on TDCJ's shoulders and not Mr. Barbee's.

**c. The Defendants bear the brunt of responsibility for the timing of any "late-in-the-day" litigation in this case.**

Barbee has not engaged in dilatory tactics or slept on his rights, and his suit is not "speculative." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Rather, the Defendants in this case pushed for the setting of an execution date while a federal stay was in place, and then they refused to respond through the administrative grievance process to Mr. Barbee's increasingly urgent requests for accommodations of his well-known and well-documented disability, which makes it impossible for him to straighten his arms and lie down with his palms up—a presumably necessary aspect of the protocol that TDCJ intends to follow in carrying out his execution by lethal injection on November 16. Because of TDCJ's bad faith in setting an execution date while a federal stay was in place and Mr. Barbee was diligently pursuing his spiritual advisor litigation, Barbee was forced to initiate the grievance process anew and, when he did so, was met with more stonewalling and resistance from TDCJ. It is TDCJ's resistance that has created what the Court perceives as late-in-the-day litigation.  The situation the Court and parties now find themselves in is entirely within TDCJ's control and a direct result of their actions in setting an execution date prematurely and then refusing to provide more than just empty assurances that the execution can be carried out in a way that complies with the Constitution.

**d. A balancing of the equities weighs against dismissal of this case.**

Finally, while this Court may exercise its equitable powers to dismiss when a prisoner files a lawsuit too late, the equities here favor allowing the suit to proceed. This is because TDCJ suffers little or no disadvantage, prejudice, or even inconvenience by the timing of Mr. Barbee's lawsuit. For one, as this Court has noticed, the State of Texas has known generally about his physical

condition for many years and specifically, they have been on notice of his concerns that his disability will interfere with the administration of lethal injection since at least July. On information and belief, TDCJ officials have met with Mr. Barbee and at least initiated an assessment of how the lethal injection protocol would be affected or impeded by his physical impairments. In spite of having this knowledge, TDCJ has not responded to administrative grievances with information about whether and how they intend to accommodate Mr. Barbee's disability, and there is no paper record that this Court can review to assess whether his rights under the Americans with Disabilities Act and the Eighth Amendment will be violated if the State carries out his execution on November 16.

In assessing the prejudice to both sides, this Court can also consider, as it referenced in the order to show cause, that the parties are engaged in other, ongoing litigation that has to do with TDCJ's execution protocols and the logistics of Mr. Barbee's execution. While that litigation (the spiritual advisor lawsuit) does not address the issue of Mr. Barbee's disability, it is relevant because the TDCJ has used similar tactics of delay and obfuscation to limit Mr. Barbee's ability to assert his rights and this Court's ability to protect them. With regard to his rights under the Eighth Amendment and the Americans With Disabilities Act, as in the spiritual advisor case, Mr. Barbee is entitled to more than empty assurances that the State will execute him in a manner that comports with his rights and does not torture him; he has sought diligently throughout the setting of two execution dates to assert these rights. He must be allowed to pursue his § 1983 lawsuit so that he may insure that the State will be able to carry out his execution in compliance with the law and the Constitution, in spite of his deteriorating condition and his physical disabilities.

**3) Barbee "must divulge the results of that [Step 2 grievance] process or describe why he filed suit before concluding the grievance process." (Order at 3).**

Undersigned counsel has not received any answer to the Step 2 grievance process submitted by Barbee on September 22, 2022. On November 7, 2022, Mr. Barbee told undersigned counsel via telephone that he too had not received an answer to that grievance.

**a. Mr. Barbee has not been dilatory in exhausting his administrative remedies,**

Mr. Barbee has not been dilatory in exhausting the grievance process; prison officials have been dilatory in handling, processing and replying to his grievances. Mr. Barbee has explained his grievance process in his complaint:

> 96. In accordance with the procedures outlined in the Offender Orientation Handbook, on July 9, 2021 Mr. Barbee submitted a Step 1 Offender Grievance stating "I can not extend my arms straight out with my palms up or down, If my arms are forced to be straightened out in any way, it will cause extreme pain and suffering because I lack the range of motion in both arms...Something would break or tear if my arms were to be forced straight out...I've been trying for years for medical to give me medical to help me with this issue." (Appendix 8). On September 15, 2021, Mr. Barbee again prepared and submitted a Step 1 Offender Grievance Form, stating the same problems. (*Id.*). On September 28, 2021 Mr. Barbee submitted yet another grievance on Sept. 29, 2021, this time a Step 2 grievance, stating that nothing had been done on the earlier grievances regarding his arms. (*Id.*). A review of the grievance dated Oct. 14, 2021 merely stated that Barbee had been given appropriate medical attention. (*Id.*) On March 16, 2022, Mr. Barbee submitted yet another Step 1 grievance, stating that he "cannot extend [his] arms straight on the gurney or with my palms-up position," and asked what accommodations would be made to avoid extreme pain, (*Id.*) On September 9, 2022 Mr. Barbee submitted a Step 2 grievance stating that his previous Step I grievances were not resolved and he had still no explanation as to how his arms were to be strapped down at his execution. (*Id.*) (Complaint, Par. 96, p. 28)

Barbee should not be faulted for failing to complete a process over which he had no control. He has shown that his repeated grievances were ignored and not returned to him. Complaint, Appendix 8. TDCJ's procedure here is the same as with Mr. Barbee's spiritual advisor lawsuit grievances. There, this Court observed:

> Exhaustion has been a reoccurring theme in the lawsuits challenging Texas'

approach to spiritual advisors in the execution chamber. In another case, one court found:

> There is no indication in the record that filing a prison grievance for review by a warden and then administrative staff would be productive when they have no ability to change TDCJ execution protocol. It appears that Murphy has effectively satisfied the spirit of the exhaustion rule. Dismissing this action for failing to file prison grievances when the issues have already been passed upon by the TDCJ director and the state courts would prioritize hollow formality over the religious rights of a man condemned to die soon.

*Murphy v. Collier*, 423 F.Supp.3d 355, 359 (S.D. Tex. 2019). The Fifth Circuit has similarly deemphasized the exhaustion requirement in similar cases, primarily because the Supreme Court has stayed the execution of inmates who have not fully complied with the technical exhaustion requirements. *See Murphy v. Collier*, 942 F.3d 704, 709 (5th Cir. 2019).
*Barbee v. Collier*, 566 F. Supp. 3d 726, 735-36 (S.D. Tex. 2021).

**b. Exhaustion of administrative remedies is an affirmative defense that does not need to be pled in the complaint.**

An inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the Defendants have the burden to plead and prove by a preponderance of the evidence, "[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (noting "that inmates are not required to specially plead or demonstrate exhaustion in their complaints").

In *Jones,* the Court weighed whether § 1997e(a)'s mandate that an inmate exhaust administrative remedies is a pleading requirement that the inmate must satisfy in his complaint, thus allowing the district court to screen a complaint that fails to plead exhaustion, or an affirmative defense that the defendant must plead and prove. 549 U.S. at 204. The Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. As such, failure to exhaust is not

subject to screening for *sua sponte* dismissal by the district court. *See id.* at 214 ("There is ... no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust.")

The Fifth Circuit is also in accord with Jones:

The Supreme Court has held, however, that the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal...Inmates are not required to plead or otherwise demonstrate exhaustion in their complaints...A district court may only dismiss a claim sua sponte based upon failure to exhaust if such failure is 'apparent from the face of the complaint.'
*Herschberger v. Lumpkin*, 843 F. App'x 587, 590 (5th Cir. 2021) (citing *Jones*, 549 U.S. at 215).

### c. Mr. Barbee has shown that he is not subject to the exhaustion requirement.

The Prison Litigation Reform Act requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although the PLRA's exhaustion requirement is strictly construed, the statute "contains its own, textual exception to mandatory exhaustion" that applies when remedies are not "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). That is, an inmate must only exhaust available remedies, not unavailable ones. *Id.* (citing 42 U.S.C. § 1997e(a)). The Supreme Court has identified three situations in which an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators

-13-

thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

Exceptions 1 and 3 would apply here, as Mr. Barbee has shown TDCJ's indifference and inaction in regard to his many complaints and grievances.

### d. The Supreme Court held that Mr. Ramirez, in similar circumstances, had done all he could to exhaust his administrative remedies.

In *Ramirez v. Collier*, 142 S. Ct. 1264 (2022), a religious rights lawsuit, Mr. Ramirez faced hurdles similar to those Mr. Barbee faced in regard to his physical disabilities grievances. Mr. Ramirez, like Mr. Barbee, "sought to vindicate his rights for months," *Ramirez* at 1283, but prison officials were slow to respond. The Supreme Court held that "respondents can hardly complain about the inequities of delay when their own actions were a significant contributing factor." *Id.*

**4. Barbee filed suit under the Americans With Disabilities Act. Under the ADA, Barbee must show several factors, including that "he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity." Cadena v. El Paso Cnty., 946 F.3d 717, 723 (5th Cir. 2020). Barbee must show cause why his ADA claim is not subject to dismissal for failing to allege a valid ground for relief.**

The Plaintiff's ADA claim alleges a valid ground for relief. Simply put, TDCJ's failure to make reasonable accommodations to Mr. Barbee's particularized needs—which emanate from a disability long-known to the Defendants—would subject him to more pain and punishment than a non-disabled death-sentenced prisoner being executed by the State. Mr. Barbee's allegations are sufficient to preclude summary dismissal of his ADA claim.

To state a claim under the ADA, a plaintiff generally must show (1) that he is a qualified individual with a disability in the meaning of the ADA; (2) that he is either being excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was

otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *See, e.g.*, *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

First, Mr. Barbee has a disability squarely within the ADA's ambit. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). The law requires that the term "disability" to be construed broadly. *See id.* at § 12102(4)(A). Major life activities include, among others, "caring for oneself, performing manual tasks, . . . sleeping, walking, standing, lifting, bending, . . . and working." *Id.* at § 12102(2)(A). As set forth in the Complaint, there is well-documented evidence of Mr. Barbee's severely restrained range of motion in both arms and his inability to straighten his arms and lie down with his palms up. *See* Doc. 1 at paras. 30-62 (documenting medical history substantiated by TDCJ records). His arm immobility has prevented him from being transported, receiving medical attention, caring for himself, and walking. *See, e.g.*, *id.* at paras. 52, 54, 57, 58, 61, 62. His progressively worsening condition has substantially limited several major life activities.

Second, Mr. Barbee is being denied the benefits of the TDCJ's "services" and has been "otherwise discriminated against" because they have refused to accommodate him during the upcoming execution procedure. Mr. Barbee is entitled to the protections offered by the ADA because TDCJ qualifies as a public entity. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory definition of 'public entity,' . . . [under] § 12131(1)(B)"); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) ("The Supreme Court has held that prisons are public entities . . . ."). While prison may be a somewhat unique context for application of the ADA, "failure to make reasonable accommodations to the needs of a disabled

prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006); *see also Streater v. Davis*, No. 5:19-CV-00263-H, 2021 WL 5768849, at *13 (N.D. Tex. Dec. 6, 2021), *appeal dismissed*, No. 21-11253, 2022 WL 10362714 (5th Cir. Oct. 18, 2022). Mr. Barbee currently faces the prospect of an execution that is uniquely agonizing, whereby he would suffer more in the process than non-disabled prisoners who have been or will be put to death. *See* Doc. 1 at paras. 81-92.

Third, Mr. Barbee's disability explains the TDCJ's denial of benefits and its discrimination against him. TDCJ has been on notice about Mr. Barbee's serious arm immobility condition for many years. He has been afflicted from 2006 through this date, and his condition has worsened over time. The TDCJ's own records substantiate his disability, its duration, and its impact. *See* Doc. 1 at paras. 30-62; Doc. 1-1 at Appendix 2. Moreover, Mr. Barbee has made the requisite grievances. *See* Doc. 1-1 at Appendix 8. But, TDCJ has made no accommodations. "The Fifth Circuit has held that a defendant's failure to make reasonable accommodations to the needs of disabled persons can constitute intentional discrimination under the ADA." *Borum v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *8 (N.D. Tex. Jan. 26, 2015); *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) ("failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion").

Basically, Mr. Barbee's ADA claim turns on his allegation that the execution procedure TDCJ is currently planning to utilize will unlawfully "cause [him] to suffer more pain and punishment than non-disabled prisoners." *McCoy, supra*, at *7. Given his legitimate disability, his

exclusion from the benefit of a non-torturous execution, and the State's complete failure to make an accommodation, Mr. Barbee's ADA claim not only survives dismissal but also warrants injunctive relief.

**5) "Barbee must show cause why his Eighth Amendment claim is not subject to dismissal for not providing more detailed information about how, with the current configuration of the death chamber, TDCJ could modify its process to meet his requested accommodations." (Order at 3).**

In the ADA context, apart from the Eighth Amendment context, it should be noted that plaintiffs do not have a burden of identifying the alternative or reasonable accommodation. *See Windham v. Harris Co., Texas*, 875 F.3d 229, 237 n. 11 (5th Cir. 2017) ("Of course, a plaintiff need not request, or even know, the particular reasonable accommodation he ultimately requires. That judgment 'is best determined through a flexible, interactive process' involving both the plaintiff and the public entity," citing *Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 165 (5th Cir. 1996), cert. denied, 519 U.S. 1029 (1996).

Even if Mr. Barbee had such a burden, in his complaint, he explained his attempts to obtain this information from the Defendants:

> 93. Undersigned counsel also inquired as to whether TDCJ was planning any measures to avoid the pain and suffering an arms-outstretched execution would entail. On September 9, 2021 undersigned counsel e-mailed a letter to TDCJ General Counsel Ms. Kristen Worman. (Appendix 6). In that letter, Mr. Barbee's counsel requested information as to:
>> 1) whether accommodations have been made or are planned to be made to the gurney that would not involve having his arms stretched out straight at his sides, in a cross-like position
>> 2) whether the arms of the gurney are moveable or adjustable so as to allow for bent-arms
>> 3) whether the execution can proceed without having Mr. Barbee's arms in a palms-up position
>> 4) whether the intravenous injection can be delivered from a spot other than his wrist

5) whether the execution team at the Polunsky Unit have been made aware of the physical limitations of Mr. Barbee regarding his planned execution.
(Appendix 6, letter of A. Richard Ellis to Kristen Worman, General Counsel for TDCJ.
(Complaint, par. 93, p. 27)

Barbee also detailed the Defendants' response:

94. On September 16, 2021, undersigned counsel received a response from Ms. Amy Lee, Project Coordinator, Office of the General Counsel, TDCJ. (Appendix 7). In that response, Ms. Lee stated
The Texas Department of Criminal
Justice (TDCJ) received your correspondence dated September 9, 2021 inquiring about whether any measures have been taken or planned to be taken regarding Mr. Barbee's long-standing arm immobility issues...any concerns or complaints related to health-related matters or other confinement issues within the DCJ's control are addressed by following the process as outlined in the Grievance Procedures for Offenders section of the TDCJ Offender Orientation Handbook. Mr. Barbee will need to follow the procedures as outlined for the TDCJ to aptly provide a response.
E-mail response of September 26, 2021, Ms. Amy Lee, Project Coordinator, Office of the General Counsel, TDCJ. (Appendix 7).
(Complaint par. 94, p. 27-28)

Since that date, counsel for Barbee has received no information as to any ameliorative measures that TDCJ intends to take. Due to Defendants' refusal to divulge information, Mr. Barbee requested "a preliminary injunction preventing his execution unless he is allowed to be on the gurney with bent arms and in a position that will not compromise his arm immobility issues discussed *supra*." (Complaint, par. 100, p. 29). He also proposed that "[a] simple alternative method is also available and is requested by Mr. Barbee: modifications to normal procedures that would allow him to lie on the gurney with arms bent and not outstretched. This alternative would pose no substantial harm or disruption to the execution process. (Complaint par. 102, p. 30).

The Court's order stated that "Barbee, however, does not provide any specific information about what modifications would meet his expectations." Order at 3. However, Barbee included a

picture of the gurney (Appendix 9) and pointed to the fact that the armrests were rigid (Complaint at p. 9, 18), identifying that as the arm-immobility problem that could be easily modified. There are at least two readily-apparent methods. The armrests themselves could either be modified so that they would be bendable at the elbow, allowing an execution with bent arms, or Mr. Barbee could be strapped to the gurney at his elbows, instead of his wrists, also allowing bent arms on the gurney.

However, this is just speculation, as any lack of specificity or greater detail as to these proposals in the Complaint is directly due to Defendants' refusal to communicate any information as to what modifications might be acceptable, practical, or feasible for them, as they would be undertaken under the complete control of the Defendants. Mr. Barbee has requested details, but they have not been forthcoming. As this Court held in connection with his religious rights lawsuit, "Barbee would not know how prison officials would conduct his own execution until they told him." *Barbee v. Collier*, 566 F. Supp. 3d 726, 734 (S.D. Tex. 2021).[6]

DATED: November 7, 2022.

Respectfully submitted,

> *s/s A. Richard Ellis*
> A.  Richard Ellis
> Texas Bar No. 06560400
> 75 Magee Avenue
> Mill Valley, CA 94941
> (415) 389-6771
> FAX (415) 389-0251

---

[6] Recently, Mr. Barbee has informed counsel that "the warden" (presumably, the Polunsky Unit warden) has communicated to Mr. Barbee that he will not be executed in a manner that would amount to torture, thus showing that TDCJ are at least aware of his disabilities. However, it is still unknown as to who made these accommodations; when they were made; whether whoever made them had authority to do so (arguably the warden of the Polunsky Unit has no such authority); what the accommodations might be; or whether they are sufficient and appropriate steps to avoid the pain and suffering an arms-outstretched execution would entail.

a.r.ellis@att.net

**CERTIFICATE OF ELECTRONIC SERVICE**

I, A. Richard Ellis, do hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court on November 7, 2022. The Court's electronic case filing system has notified Defendants' counsel of record.

*/s/ A. Richard Ellis*
A. RICHARD ELLIS
Attorney for Plaintiff Stephen Barbee
Texas Bar No. 06560400
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
FAX (415) 389-0251
a.r.ellis@att.net