IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, | § | |
| *Plaintiff*, | § | |
| | § | CIV. ACT. NO. 4:22–CV–03684 |
| v. | § | **DEATH PENALTY CASE** |
| | § | |
| BRYAN COLLIER et al., | § | |
| *Defendants*. | § | |

## DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*STEPHEN M. HOFFMAN
Assistant Attorney General
Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
(512) 936–1400

*Counsel of Record

_____

ATTORNEYS FOR DEFENDANTS
_____

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

RESPONSE TO ORDER TO SHOW CAUSE ................................. 1

    I.    Barbee Has Appointed Counsel. ................................. 2

    II.   Barbee's Dilatoriness Requires the Summary Denial of His Stay Motion. Alternatively, His Claims Are Time-Barred.................................................................. 5

    III.  Barbee Has Not Exhausted his Administrative Remedies. ............................................................... 12

    IV.  Barbee's ADA Claim Fails.......................................... 14

    V.   Barbee's Eighth Amendment Claim Fails. ........................ 18

CONCLUSION ........................................................................ 24

CERTIFICATE OF SERVICE ..................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) .................................................. 23

*Barr v. Lee*, 140 S. Ct. 2590 (2020) ......................................... 6, 18, 19

*Baze v. Rees*, 553 U.S. 35 (2008) ........................................ 19, 20, 22

*Berry v. Epps*, 506 F.3d 402 (5th Cir. 2007) ...................................... 6

*Bible v. Davis*, 138 S. Ct. 2700 (2018) ............................................... 6

*Bible v. Davis*, 4:18–CV–1893, 2018 WL 3068804 (S.D. Tex. Jun. 21, 2018) ... 6

*Bible v. Davis*, 739 F. App'x 766 (5th Cir. 2018) ......................................... 6, 11

*Booth v. Churner*, 532 U.S. 731 (2001) ........................................... 12

*Brown v. Livingston*, 457 F.3d 390 (5th Cir. 2006) ........................................... 6

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) .................................... 6, 18, 19, 20

*Cadena v. El Paso Cnty.*, 946 F.3d 717 (5th Cir. 2020) .................................. 15

*Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) ................................. 13

*Ex parte Barbee*, No. WR–71,070–04, 2021 WL 4713629 (Tex. Crim. App. Oct. 8, 2021) ............................................... 3, 8

*Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) .................................. 3

*Ex parte Gallo*, 448 S.W.3d 1 (Tex. Crim. App. 2014) ........................................ 3

*Fegans v. Johnson*, No. H–09–4019, 2010 WL 1425766 (S.D. Tex. Apr. 8, 2010) ............................................... 13

*Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) .................................. 14, 15

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) ................................. 11

*Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) ..................................................... 23

*Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012) ................................................ 12

*Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004) ........................................... 6, 9

*Hill v. McDonough*, 547 U.S. 573 (2006) ........................................................... 6

*Jones v. Bock*, 549 U.S. 199 (2007) .................................................................. 12

*Kerr v. Thaler*, 384 F. App'x 400 (5th Cir. 2010) ............................................. 20

*Kincy v. Livingston*, 173 F. App'x 341 (5th Cir. 2006) ....................................... 7

*Martel v. Clair*, 565 U.S. 648 (2012) .................................................................. 2

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004) .............. 15

*Montgomery v. Barr*, 507 F. Supp. 3d 711 (N.D. Tex. 2020) ........................... 17

*Moye v. Clerk, Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) . 23

*Nelson v. Campbell*, 541 U.S. 637 (2004) ..................................................... 7, 12

*Neville v. Johnson*, 440 F.3d 221 (5th Cir. 2006) .............................................. 6

*Norton v. Enns*, 2:14-CV-0040, 2014 WL 3947158 (N.D. Tex. Aug. 12, 2014) 23

*Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010) ...................................... 19, 20

*Ramirez v. Collier*, 142 S. Ct. 1264 (2022) ................................................. 12, 13

*Reese v. Livingston*, 453 F.3d 289 (5th Cir. 2006) ............................................. 6

*Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012) ........................................... 20

*Rivas v. Thaler*, 432 F. App'x 395 (5th Cir. 2011) ........................................... 20

*Ross v. Blake*, 136 S. Ct. 1850 (2016) ................................................................ 13

iii

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014) ............................................. 10

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013) ........................................... 19

*Smith v. Johnson*, 440 F.3d 262 (5th Cir. 2006) ................................................ 6

*Storey v. Lumpkin*, 8 F.4th 382, 393 (5th Cir. 2021) ........................................ 3

*Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285 (S.D. Tex. Aug. 20, 2019) ...................................................................................................... 10

*Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012)................................................. 19

*Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008) .................................................. 10

*Waters v. Texas*, 747 F. App'x 259 (5th Cir. 2019) .......................................... 23

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017) ............................................ 10

*Whitaker v. Livingston*, 597 F. App'x 771 (5th Cir. 2015) ............................. 7, 8

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013)...................................... 24

*White v. Johnson*, 429 F.3d 572 (5th Cir. 2005) ................................................ 6

*Wilkins v. Davis*, 832 F.3d 547 (5th Cir. 2016) ................................................. 2

*Windham v. Harris Cnty., Tex.*, 875 F.3d 229 (5th Cir. 2017) ........................ 16

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ................................................. 19

*Woodford v. Ngo*, 548 U.S. 81 (2006) .............................................................. 12

*Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001) ................................... 13

**Statutes**

18 U.S.C. § 3599............................................................................................... 2

18 U.S.C. § 3599(e)............................................................................................ 3

18 U.S.C. § 3626(a)(1)(A) ................................................................ 23

42 U.S.C. § 1983 ..................................................................... passim

42 U.S.C. § 1997e(a) ..................................................................... 12

Tex. Code Crim. Proc. Art. 11.071 § 5(a) .......................................... 3

Tex. Gov't Code § 501.008 .............................................................. 13

## Other Authorities

The Americans with Disabilities Act ......................................... passim

The Prison Litigation Reform Act .................................. 12, 13, 14, 23

## RESPONSE TO ORDER TO SHOW CAUSE

Barbee murdered his pregnant ex-girlfriend and her seven-year-old son by suffocating them to death. Barbee confessed multiple times to killing the victims, had a motive to commit the crime, was caught burying the bodies, and led the police to where the bodies were buried. Pursuant to the order of the trial court, Barbee is scheduled to be executed sometime after 6:00 P.M. on November 16, 2022. Barbee has already availed himself of all the state and federal appeals available to death-row inmates in Texas—plus two subsequent state writ proceedings and another § 1983 suit challenging the prison's spiritual advisor policies. This is Barbee's *third* execution date.

A mere twenty-two days before his execution, Barbee filed the instant federal civil rights lawsuit. In his complaint, Barbee claims that, because of his physical ailments, executing him would constitute cruel and unusual punishment and violate the Americans with Disabilities Act (ADA). Complaint Pursuant to 42 U.S.C. § 1983 (Compl.), ECF No. 1. He also moves for a stay of execution. Motion for Stay of Execution (Mot. Stay), ECF No. 4. This Court has ordered Barbee to show cause and provide briefing on issues relevant to the case. ECF No. 5. Barbee has responded, *see* ECF No. 6, and now so do the Defendants.

## I.     Barbee Has Appointed Counsel.

In his "note regarding timeliness," Barbee asserts that he could not have brought this action earlier because he has lacked appointed counsel since 2019. Compl. at 7–8, ECF No. 1. In its show cause order, the Court noted that current counsel was appointed in Barbee's federal habeas proceeding and has not yet been relieved of his duties. ECF No. 5 at 2. Current counsel also has represented Barbee in state court proceedings and Barbee's § 1983 suit challenging the prison's spiritual advisor policies. *Id*. Consequently, this Court asked Barbee's counsel to explain why his representation to the Court that Barbee only has counsel for clemency is keeping with his duty of candor. *Id*.

Indeed, the statement Barbee lacks appointed counsel is materially false. 18 U.S.C. § 3599 "entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings." *Martel v. Clair*, 565 U.S. 648, 652 (2012). Under § 3599, appointed counsel is obligated to continue representing the inmate unless and until a court of competent jurisdiction grants a motion to withdraw. *See Wilkins v. Davis*, 832 F.3d 547, 557–58 (5th Cir. 2016) ("[C]ounsel is authorized—and indeed obligated—to continue representing the defendant until the court permits him to withdraw."). This includes "all available post-conviction process, together with applications for stays of execution and other appropriate motions and

procedure." 18 U.S.C. § 3599(e). Barbee has not shown that counsel has been relieved of his responsibilities by the competent court.

Barbee complains that counsel has not been compensated for his work in state court. ECF No. 6 at 4–6. And it is true that Barbee cannot receive compensation in state court until the Texas Court of Criminal Appeals ("CCA") finds that he satisfies Texas Code of Criminal Procedure Article 11.071 Section 5). *Ex parte Gallo*, 448 S.W.3d 1, 4 (Tex. Crim. App. 2014). The CCA has held that state law "does not provide for the appointment of counsel, or for investigative or expert funding, for the preparation of subsequent writ applications, as it does for preparation of an initial writ application." *Ex parte Blue*, 230 S.W.3d 151, 167 (Tex. Crim. App. 2007). Similarly, *Harbison v. Bell*, 566 U.S. 180, 189 (2009), explicitly rejected the notion that §3599(e) permits federal funding for subsequent state habeas proceedings. *Storey v. Lumpkin*, 8 F.4th 382, 393 (5th Cir. 2021). Yet, Barbee's complaints about his counsel's compensation and funding miss the mark. This is not a subsequent state habeas proceeding—this is a federal civil rights lawsuit. Counsel's ability to fund his subsequent state habeas work has no relevance here. But even if it did, Barbee brought the substance of his lethal injection claim in an abusive state writ before his October 2021 execution date. *Ex parte Barbee*, No. WR–71,070–04, 2021 WL 4713629 (Tex. Crim. App. Oct. 8, 2021) (per curiam) (not designated for publication). His lack of state court appointment and/or funding

demonstrably did not present a barrier to him filing this abusive state habeas application. And if Barbee was able to raise his claim in state court proceedings in 2021, he could have raised it here in federal court as well.

Moreover, Barbee's purported lack of funding did not stop Barbee from filing numerous other state and federal actions with respect to his current and prior execution dates. *See* Defs.' Resp. in Opp. to Stay, ECF No. 8 (conviction and postconviction proceedings). And Barbee is also at least partially represented by the Western District's Capital Habeas Unit (CHU). *Barbee v. Collier et al.*, 4:21–cv–03077 (S.D. Tex.) (spiritual advisor lawsuit docket listing CHU attorney); *Barbee v. Davis*, No. 4:09–cv–00074–Y (N.D. Tex.), ECF No. 102 (appointing CHU for clemency). It is the Defendants' understanding that CHU attorneys and staff are salaried employees whose compensation is not dependent on appointment. Barbee states that their "remit does not extend to state court proceedings aside from clemency." ECF No. 6 at 3 n.3. But, again, this is a federal lawsuit.

Barbee states that, without appointed counsel or funding for investigation, experts, and document collection, the presentation of the instant complaint has been "severely hampered." Compl. at 8, ECF No. 1. But he submitted seventy-five pages of medical records with his lawsuit. Appx. 2, ECF No. 1-1. Barbee has also attached to his instant complaint two declarations from a CHU investigator, who visited Barbee in prison and details his relevant

4

medical conditions. Appx. 4, ECF No. 1-1. And Barbee provides reports from a neurologist who examined Barbee—twice—at the Polunsky Unit and reviewed various materials. Appx. 5, ECF No. 1-1. "Severely hampered" is a subjective assessment, but under the circumstances it appears misleading.

Barbee's counsel asserts that he has assumed that he cannot get compensated for any of his federal work, either by this Court or the federal habeas court. ECF No. 6 at 5–6. This appears to be an untested assumption[1], but Barbee has not suffered any consequent prejudice. Counsel has zealously represented Barbee since 2009 through the present and has filed numerous state and federal pleadings on his behalf. Moreover, as the Defendants have argued, Barbee's medical conditions are longstanding. He could and should have brought this lethal-injection lawsuit long ago—even while his federal habeas proceedings were still pending.

## II. Barbee's Dilatoriness Requires the Summary Denial of His Stay Motion. Alternatively, His Claims Are Time-Barred.

This Court has required Barbee to "show cause why this case is not subject to dismissal because he waited to file suit until twenty-two days before his execution." ECF No. 5 at 2. In *Hill*, the Supreme Court stated that "[t]he

---

[1] The federal habeas court has denied Barbee funding for investigating a subsequent state writ, largely for the reasons discussed above. Memo. Op. & Ord. Dismissing Mot. to Authorize Att'y Fees, *Barbee v. Davis*, No. 4:09-cv-00074-Y (N.D. Tex.), ECF No. 107. The Defendants are not privy to all of Barbee's funding efforts, but this particular order, at least, does not seem to preclude counsel for seeking funding for other valid activities related to Barbee's representation.

federal courts can and should protect States from dilatory or speculative suits[.]" *Hill v. McDonough*, 547 U.S. 573, 584 (2006). In fact, "[l]ast-minute stays should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019); *see also Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020). Both this Court and the Fifth Circuit have previously endorsed the denial of a stay of execution based solely on a lack of timeliness, independent of other factors, without considering the merits of the underlying claims. *See Bible v. Davis*, 4:18–CV–1893, 2018 WL 3068804, at *5 (S.D. Tex. Jun. 21, 2018) (Hoyt, J.) (capital plaintiff's "unnecessary delay in filing suit and seeking equitable relief is an independent basis on which the Court will deny relief"); *Bible v. Davis*, 739 F. App'x 766, 770 (5th Cir. 2018), *cert. and stay denied* 138 S. Ct. 2700 (2018) ("We see no error in the district court's conclusion that [plaintiff]'s suit constitutes a dilatory tactic and therefore warrants no equitable relief."); *see also Berry v. Epps*, 506 F.3d 402, 404–05 (5th Cir. 2007) (per curiam); *White v. Johnson*, 429 F.3d 572, 573–74 (5th Cir. 2005) (per curiam); *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (per curiam); *see also Brown v. Livingston*, 457 F.3d 390, 391 (5th Cir. 2006); *Smith v. Johnson*, 440 F.3d 262, 263–64 (5th Cir. 2006); *Reese v. Livingston*, 453 F.3d 289, 290–91 (5th Cir. 2006); *Neville v. Johnson*, 440 F.3d 221, 222–23 (5th Cir. 2006) (per curiam). In the lethal-injection context, petitioners who dilatorily raise previously

available claims immediately before their execution are not entitled to a stay regardless of whether they state a cognizable claim under § 1983.

Barbee's plainly dilatory attempts at obtaining a stay of execution are exactly of the kind the Supreme Court has cautioned against. *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004). Such dilatory tactics should not be countenanced, and Barbee is not entitled to a stay at this late date. *Id.*; *see Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015) ("If [plaintiff] were to wait until an execution date was set to file this action, he would be unable to stay the execution under this court's clearly established precedent to pursue these claims.'"); *Kincy v. Livingston*, 173 F. App'x 341, 342–43 (5th Cir. 2006).

Barbee claims that his health issues are longstanding, and he has had three execution settings. *See* Compl. at 9, ECF No. 1 (Barbee's health issues are fifteen years old and have extended through most of his death row residency). Yet, Barbee did not file his § 1983 lawsuit raising the instant claim until his current execution date was imminent. Barbee's third execution date (the instant date) was set on August 12, 2022. Barbee could have made his as-applied challenge to the prison's lethal injection protocol then, but he chose not to, waiting until a mere twenty-two days before his execution to file his complaint. Compl., ECF No. 1 (dated October 25, 2022).

7

Barbee's second execution was set for October 12, 2021. He was visited by an investigator and a doctor who took note of his health problems. Appxs. 4 & 5, ECF No. 1-1. Again, Barbee could have contested the prison's execution protocol in federal court at that time, but he opted not to despite raising virtually the same claim in state court. *Ex parte Barbee*, 2021 WL 4713629, at *1. And when Barbee's first execution date was set for October 2, 2019, he did not challenge the execution protocol via § 1983 then either. Indeed, since Barbee states that his medical issues are longstanding—dating back to May 2006, *see* Compl. at 9, ECF No. 1—he could have even brought this action long before any execution date was set. *Whitaker*, 597 F. App'x at 774. Barbee himself states: "Even in 2014, [Barbee] could not extend his arms fully outstretched as they would be on a gurney." Compl. at 14, ECF No. 1. And Barbee's own declaration acknowledges: "It's been like this for years and is getting worse." Appx. 3 at 4, ECF No. 1-1 (ECF page 95). Barbee now says that "[h]is physical abilities have recently deteriorated quite significantly, due to the passage of time, ageing, and the conditions of his confinement." ECF No. 6 at 6–7. But this conflicts with his own previous statements, as well as the fact that he raised this claim before his last execution. Barbee also asserts that he had trouble obtaining funding for second medical evaluation of Barbee. *Id.* at 7 n.5. But a first evaluation occurred in 2021, and it is unclear why he believes that the second evaluation is materially different.

8

Barbee accuses the TDCJ of bad faith and says that he could not bring this suit while he exhausted his administrative remedies. ECF No. 6 at 7–9. But Barbee's conditions are fifteen years old. He could have exhausted his remedies much, much earlier. Moreover, Barbee's complaint suggests that his Step 1 grievance was not resolved, when it was. Barbee's attachments simply do not contain the TDCJ's response, which is unfavorable for his current case. Appx. 8, ECF No. 1-1 (ECF page 133). This response states there will be no need to have Barbee's arms extended straight and therefore he will not experience extreme pain. Defs.' Resp. in Opp. to Stay Ex. 1, ECF No. 8-2. This grievance was also resolved on September 6, 2022—well before Barbee filed his lawsuit on October 25, 2022. *Id*.

Instead of bringing this suit in a timely manner years ago, Barbee did "the very thing the plaintiff is not entitled to do . . . namely, to wait until his execution is imminent before suing to enjoin the state's method of carrying it out." *Harris*, 376 F.3d at 417 (citation omitted). Specifically,

> [b]y waiting until the execution date was set, [Barbee] left the state with a [Hobson's] choice: It could either accede to [his] demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the [Constitution]; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under [Barbee's] scheme, and whatever the state's choice would have been, it would have been the timing of [his] complaint, not its substantive merit, that would have driven the result.

*Id*. "By waiting as long as he did, [Barbee] leaves little doubt that the real purpose behind his claim[s] is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Id*. at 418. This Court should refuse to countenance this dilatoriness and follow the Supreme Court's direction in *Hill* by denying a stay solely based on lack of timeliness without considering the merits.

Along the same lines, the Fifth Circuit holds that a statute of limitations applies to § 1983 method-of-execution challenges, and such attacks are appropriately filed either after a plaintiff's conviction and sentence become final on direct review, or the date that an execution protocol change becomes effective. *See Walker v. Epps*, 550 F.3d 407, 411–15 (5th Cir. 2008). Because § 1983 has no statute of limitation, Texas' two-year statute for personal-injury actions governs this challenge. *Whitaker v. Collier*, 862 F.3d 490, 494 (5th Cir. 2017). In this case, the statute of limitations began to run on the later of the two relevant dates—when the protocol changed July 9, 2012, *see Sells v. Livingston*, 750 F.3d 478, 480–81 (5th Cir. 2014)—and expired on July 9, 2014. Consequently, even if he were to file under § 1983, Barbee's time for seeking relief on this claim has already expired. *See*, *e.g.*, *Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285, at *4 n.8 (S.D. Tex. Aug. 20, 2019) ("The defendants convincingly argue that Swearingen's claims are time-barred. A two-year limitations period exists for the relevant portions of Texas' protocol.

Despite recent changes to an unrelated portion of the Texas protocol, the core issues at play have been available to Swearingen since 2012, at least.").

Moreover, even if the Court were to consider Barbee's challenge "as applied" and view onset of his mobility issues as starting the statute-of-limitations clock, his claims are nevertheless time-barred. As explained above, Barbee has detailed health problems dating back to 2006, and even admits that "in 2014, [Barbee] could not extend his arms fully outstretched as they would be on a gurney." Compl. at 14, ECF No. 1. He states in his own declaration that his arms have been a problem for years. Appx. 3 at 4, ECF No. 1-1 (ECF page 95). In short, Barbee's medical conditions are longstanding. Barbee's claims are time-barred on their face—even if the Court construes his lethal-injection challenge as "as applied" and such "as applied" claims benefit from a different statute of limitations than facial challenges. *See*, *e.g.*, *Bible*, 739 F. App'x at 772 ("this court has found claims similar to [Plaintiff's] to be subject to the statute of limitations").

Likewise, claims brought under the ADA are subject to the state's personal injury statute of limitations. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (en banc) (applying the two-year Texas personal-injury limitations period for claims under Title II of the ADA). As shown above, Barbee has aware of his asserted disability and limitations for much longer than two years. The resetting of his execution date does not reset the statute

11

of limitations for challenges to the method of execution. Accordingly, both Barbee's Eighth Amendment and ADA claims are time-barred.

## III.   Barbee Has Not Exhausted his Administrative Remedies.

This Court has requested that Barbee address why he has not exhausted his administrative remedies. ECF No. 5 at 3. Section 1997(e) of the PLRA[2] provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ramirez v. Collier*, 142 S. Ct. 1264, 1275–76 (2022). Exhaustion is *mandatory* "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 739–40 n.6 (2001); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("[T]here can be no doubt that pre-filing exhaustion of [the] prison grievance processes is mandatory.") (citing *Woodford v. Ngo*, 548 U.S. 81 (2006) & *Jones v. Bock*, 549 U.S. 199 (2007)). The PLRA's exhaustion requirement applies to Barbee's challenge to TDCJ's execution procedure. *See Nelson*, 541 U.S. at 643, 650 (concluding that a prisoner's complaint about the procedure used to find a vein during the execution process was a § 1983 civil rights complaint and subject to the PLRA exhaustion

---

[2]   The Prison Litigation Reform Act.

requirement); *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").

Barbee's counsel's email correspondence with TDCJ General Counsel, *see* Pl. Appx. 6 & 7, ECF No. 1-1, did not satisfy the mandatory exhaustion requirement under PLRA. *See*, *e.g.*, *Fegans v. Johnson*, No. H–09–4019, 2010 WL 1425766, at *13 (S.D. Tex. Apr. 8, 2010) (concluding that a prisoner's attorney sending a notice of claims did not satisfy the PLRA exhaustion requirement). Barbee may only exhaust via TDCJ's grievance process, as reflected by TDCJ's response to Barbee's counsel. *Id.*; Tex. Gov't Code § 501.008; *see Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion."). And to properly exhaust, a prisoner must "pursue the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requires completion of both steps of TDCJ's grievance process before a complaint may be filed. *Id.*; *see also Ramirez*, 142 S. Ct. at 1276. Barbee only completed his Step 1 grievance—he did not receive a ruling on a Step 2 grievance—before filing suit. Compl. at 28, ECF No. 1; Appx. 8, ECF No. 1-1 (ECF pages 132-35); Defs.' Resp. in Opp. to Stay Exs. 1 & 2, ECF Nos. 8-2 & 8-

3.[3] It is also unclear from the grievances that Barbee is attempting to seek an accommodation specifically under the ADA with respect to being strapped to the gurney. Because Barbee did not properly exhaust administrative remedies prior to bringing his claims in federal court, PLRA mandates dismissal of Barbee's complaint.

## IV.   Barbee's ADA Claim Fails.

This Court has asked Barbee to "show cause why his ADA claim is not subject to dismissal for failing to allege a valid ground for relief." ECF No. 5 at 3. Defendants agree that Barbee fails to state a prima facie claim under the ADA, because—to the extent that he properly made a request for accommodation—TDCJ has not denied him one. TDCJ responded to Barbee's grievances by crafting a reasonable accommodation.

To make out a prima facie case for failure to accommodate under the ADA or the Rehabilitation Act, a plaintiff must show (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations for such known limitations. *Feist v. La.*, *Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Barbee

---

[3]      The prison did not respond to Barbee's Step 2 grievance until November 8, 2022. However, as shown above, Barbee has been aware of his conditions for many years. Thus, these grievances should have been filed many years ago. Barbee cannot create an exigency through a delay of many years and then complain that the TDCJ is not acting quick enough.

also claims that his execution violates the ADA. But Barbee fails to plead facts upon which the Court could infer Barbee has been "'excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity.'" *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). Barbee has not articulated a service or program he has been denied access to; nor has he demonstrated he has been denied access because of his disability. Further, to the extent that he properly made a request for accommodation, Barbee fails to state a prima facie claim because TDCJ has not denied him an accommodation. Rather, TDCJ responded to Barbee's grievances by crafting a reasonable accommodation.

To make out a prima facie case for failure to accommodate under the ADA or the Rehabilitation Act, a plaintiff must show (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations for such known limitations. *Feist v. La.*, *Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

To begin, it is not clear that Barbee has demonstrated that he is a qualified individual with a disability under the ADA. His medical evaluations do not appear to explicitly state that he is a qualified individual with a

disability under the ADA. Appx. 5, ECF No. 1-1. But, assuming that Barbee is a qualifying individual, for purposes of proving ADA discrimination, it is important to distinguish between TDCJ's knowledge of a prisoner's disability versus the TDCJ's knowledge of any limitations experienced by the prisoner resulting from that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. Whether TDCJ was aware of Barbee's medical conditions is not the question. Rather, the court must assess whether TDCJ officials were aware of Barbee's asserted limitations, and specifically, limitations relevant to Barbee's execution.

The burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 236 (5th Cir. 2017). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (quotations omitted). "[K]nowledge of a disability is different from knowledge of the resulting limitation. And it is certainly different from knowledge of the necessary accommodation." *Id.* at 238. "To prevail, [Plaintiff] must adduce evidence that all three were or should have been obvious." *Id.*

16

Barbee's grievances did not request any particular accommodation. Nor has TDCJ denied him an accommodation. In fact, TDCJ offered a reasonable accommodation in response to Barbee's notice of limitation related to his execution. Barbee submitted a Step 1 grievance complaining that his arms cannot extend and be secured to the gurney palms up. *See* Defs.' Resp. in Opp. to Stay Ex. 1, ECF No. 8-2. He does not indicate what he wants TDCJ officials to do. *Id*. TDCJ's response to Barbee's Step 1 grievance was "there will be no need to have his arms fully extended straight." *Id*. In his Step 2 grievance, which he submitted on September 9, 2022, Barbee merely complains that TDCJ's Step 1 response did not provide enough detail about "how" his arms will be secured. *See* Defs.' Resp. in Opp. to Stay Ex. 2, ECF No. 8-3. But the prison responded to his Step 2 grievance: "TDCJ will secure Mr. Barbee on the gurney in a manner that will not require him to fully extend his arms straight." *Id*. TDCJ has already notified Barbee that they will accommodate his asserted limitation by not requiring his arms to be extended straight Barbee's belief that this will not be sufficient to accommodate his disability is mere speculation and has no basis in fact. *Cf. Montgomery v. Barr*, 507 F. Supp. 3d 711, 729 (N.D. Tex. 2020) (denying failure-to-accommodate claim in the execution context).

As explained in the following section, TDCJ staff are trained professionals with significant experience in this arena. The protocol provides

them substantial discretion to perform an execution in a safe and humane manner, including by adjusting the straps restraining Barbee's arms, or by inserting the IV line in a different area. The Huntsville Senior Warden has explained that Barbee's arms will not be forcibly straightened and that the gurney straps are adjustable. *See* Defs.' Resp. in Opp. to Stay Ex. 5, ECF No. 8-6. There is no basis for assuming that prison staff will not be able to accommodate Barbee as they indicated in their grievance responses. Barbee's ADA claim is meritless.

## V.  Barbee's Eighth Amendment Claim Fails.

This Court has ordered Barbee to "show cause why his Eighth Amendment claim is not subject to dismissal for not providing more detailed information about how, with the current configuration in the death chamber, TDCJ could modify its process to meet his requested accommodations." ECF No. 5 at 3. Barbee responds that he has provided sufficiently specific information in his complaint. ECF No. 6 at 18–19. But Barbee's claim is speculative and fails in all facets of the relevant Eighth Amendment analysis.

The Supreme Court "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Bucklew*, 139 S. Ct. at 1124 (affirming denial of challenge to single-drug pentobarbital challenge); *see also Lee*, 140 S. Ct. at 2591 (holding that challenge to federal single-drug pentobarbital protocol was unlikely to succeed on the merits in preliminary injunction context). To make

18

out an Eighth Amendment method-of-execution claim, an inmate must establish that the chosen method creates "a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 576 U.S. at 877 (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). This requires showing "'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). An inmate must also provide a "'feasible, readily implemented'" execution-method alternative that is not "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 51–52).

The Fifth Circuit previously rejected challenges to Texas's prior three-drug lethal injection process. *See generally Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010). However, at this point, Texas is currently using a single-drug pentobarbital protocol, which is also acceptable. *Bucklew*, 139 S. Ct. at 1120, 1134; *Lee*, 140 S. Ct. at 2591; *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016) ("The reality is that pentobarbital, when used as the sole drug in a single-drug protocol, has realized no . . . risk" that it "is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.") (quotation omitted); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1789 (2014); *Thorson v. Epps*, 701 F.3d 444, 447 n.3 (5th

Cir. 2012) ("Though Texas recently adopted a one drug protocol—also acceptable under the flexible *Baze* standard—the method at issue here exactly parallels the one cleared for use in *Raby*."). Use of pentobarbital has been upheld by many courts. *See Ringo v. Lombardi*, 677 F.3d 793, 798–99 (8th Cir. 2012) (noting that challenges to the use of pentobarbital have been denied). Moreover, the Fifth Circuit has denied certificates of appealabilty on challenges to the Texas lethal-injection protocol. *See, e.g.*, *Rivas v. Thaler*, 432 F. App'x 395, 404–05 (5th Cir. 2011); *Kerr v. Thaler*, 384 F. App'x 400, 404–05 (5th Cir. 2010).

*Baze* and *Glossip* govern all Eighth Amendment challenges, whether facial or as applied, alleging that a method of execution inflicts unconstitutionally cruel pain. *Bucklew*, 139 S. Ct. at 1122–29. Even considering Barbee's claims through the "as applied" lens, Barbee has not adequately demonstrated either a substantial risk of serious harm or a feasible and readily-implemented alternative that significantly reduces a substantial risk of severe pain. Here, the prison responded to Barbee's Step 1 grievance that "there will be no need to have his arms fully extended straight. Based on this Mr. Barbee will not suffer any extreme pain." *See* Defs.' Resp. in Opp. to Stay Ex. 1, ECF No. 8-2. And the prison responded similarly to his Step 2 grievance: "TDCJ will secure Mr. Barbee on the gurney in a manner that will not require him to fully extend his arms straight." *See* Defs.' Resp. in Opp. to

20

Stay Ex. 2, ECF No. 8-3. This is confirmed by the Senior Warden of the Huntsville Unit, as described further below. Further, the prison has executed 576 inmates since 1982. Defendants have provided a spreadsheet, *see* Defs.' Resp. in Opp. to Stay Ex. 3, ECF No. 8-4, detailing pentobarbital executions in Texas dating back to 2012, when the current procedure was adopted. Barbee has failed to identify even one case under the current protocol where the Defendants have been unable to accommodate the idiosyncratic health needs of its varied inmates. Given Texas's demonstrated history of uneventful executions with lethal injection under the current protocol, the risk of serious harm cannot be described as objectively intolerable. *Glossip*, 576 U.S. at 877. The risk of harm is certainly not "sure or very likely." *Id.*

Barbee states that he has identified an execution-method alternative, as required by Supreme Court precedent. He requests "modifications to normal procedures that would allow him to lie on the gurney with arms bent and not outstretched." Compl. at 30, ECF No. 1. But Barbee's only evidence that the prison cannot accommodate his health needs is a picture of the gurney, which he implies is largely immovable. Compl. at 9 n.3, ECF No. 1 (citing Appx. 9, a picture of a gurney). But the prison already responded that "there will be no need to have his arms fully extended straight." *See* Defs.' Resp. in Opp. to Stay Exs. 1 & 2, ECF No. 8-2 & 8-3. That the prison's gurney cannot accommodate Barbee in the manner TDCJ represents is just his speculation from a picture.

In fact, the execution protocol only states that an inmate should be "secured to the gurney" and does not specify any particular method or procedure for doing so. *See* Defs.' Resp. in Opp. to Stay Ex. 4 at 10, ECF No. 8-5 (execution protocol). There is no written prohibition on leaving an inmate's arms loosely restrained. *Id*. Likewise, the protocol allows prison staff to find a suitable vein in another area of the body if a vein in the arm is not available. *Id*. The execution protocol thus leaves prison staff substantial discretion to effectuate an execution in the face of a wide range of prisoner circumstances.

Indeed, the Huntsville Senior Warden has explained that Barbee's arms will not be extended straight and may remain bent. *See* Defs.' Resp. in Opp. to Stay Ex. 5, ECF No. 8-6. The gurney's leather straps are adjustable, allowing Barbee's arms to remain bent. *Id*. The prison has added extra padding to facilitate this. *Id*. And while the crook of the arm is the preferred location for IV insertion, staff will use another location if necessary, as they have done in previous executions. *Id*.

Barbee therefore fails to identify an execution-method alternative that is not just "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 51–52).

Moreover, although Barbee frames his requested relief as an injunction, his relief would effectively force the Defendants to rewrite their protocol to

accommodate his specific medical issues to execute him or create a point-by-point plan detailing how they intend to execute him. Such relief is not available to Barbee because it "is in the nature of mandamus." *Norton v. Enns*, 2:14-CV-0040, 2014 WL 3947158, at *3 (N.D. Tex. Aug. 12, 2014). Federal courts "do not have jurisdiction to issue the writ against a state actor or agency." *Id.* (citing *Moye v. Clerk*, *Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973)). "Instead, if relief is available to [Plaintiff], he must obtain it through a mandamus action or other appropriate action in the state courts." *Id.* Here, Barbee is affirmatively seeking to compel the TDCJ to draft and enforce policy—mandamus relief. However, this Court lacks jurisdiction to compel TDCJ officials by writ of mandamus. *See*, *e.g.*, *Waters v. Texas*, 747 F. App'x 259, 260 (5th Cir. 2019) (affirming a jurisdictional dismissal where the plaintiff sought mandamus relief against "Texas state officials to deregister her as a Tier I sex offender").

Indeed, the Fifth Circuit has previously held that a district court may not require a prison to reduce a practice to writing. *See*, *e.g.*, *Gates v. Cook*, 376 F.3d 323, 338–39 (5th Cir. 2004). In *Gates*, the Fifth Circuit concluded that while a written policy may be "desirable," the PLRA does not authorize an injunction to go so far as to require the measure to be in writing. Injunctive relief must be narrowly drawn and extend no further than necessary to correct

the alleged violation. 18 U.S.C. § 3626(a)(1)(A); *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015).

Ultimately, "what plaintiff[] [is] demanding is that, in effect, [he] be permitted to supervise every step of the execution process. [He has] no such entitlement." *Whitaker v. Livingston*, 732 F.3d 465, 468 (5th Cir. 2013). Barbee seemingly wishes to micromanage his own execution, dictating how or if he is strapped to the gurney. Barbee makes these demands without any proof that Defendants' protocol—which has been used for many uneventful executions involving inmates of varying ages and health—is inadequate. This Court should decline to substitute its own judgment on how to conduct an execution for that of seasoned professionals.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Defendants' response to Barbee's motion to stay, the Defendants ask that the Court deny any stay of execution. Alternatively, the Court should deny any stay *and* dismiss Barbee's lawsuit. *See, e.g., Bible*, 2018 WL 3068804, at *11 ("Because this lawsuit cannot proceed without a stay of [Plaintiff]'s execution date, dismissal of the action is warranted.").

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
    for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

\*Attorney-in-charge

s/ Stephen M. Hoffman
\*STEPHEN M. HOFFMAN
Assistant Attorney General
Texas Bar No. 24048978
Southern District Bar No. 602073
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Stephen.Hoffman@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

25

## CERTIFICATE OF SERVICE

I do hereby certify that on November 9, 2022, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Allen Richard Ellis
Law Office of A. Richard Ellis
75 Magee Ave., Mill Valley, CA, 94941
Email: a.r.ellis@att.net

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General

26