**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN  DISTRICT OF TEXAS**
**HOUSTON  DIVISION**

| | | |
|---|---|---|
| **STEPHEN BARBEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **No. 4:22-cv-3684** |
| vs. | § | |
| **BRYAN COLLIER,** Executive Director, | § | |
| Texas Department of Criminal Justice | § | |
| Huntsville, Texas | § | |
| | § | |
| **BOBBY LUMPKIN,** Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | **(Death Penalty Case)** |
| Division, Huntsville, Texas | § | |
| | § | |
| **KELLY STRONG,** Senior Warden, Texas | § | **Mr. Barbee is scheduled to be** |
| Department of Criminal Justice, | § | **executed on November 16, 2022** |
| Huntsville Unit, | § | |
| Huntsville, Texas, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR STAY OF EXECUTION**

**Introduction.**

Plaintiff Stephen Barbee is scheduled to be executed on November 16, 2022.[1] On

October 25, 2022, he filed in this Court a complaint under 42 U.S.C. § 1983, for violations and

threatened violations of his rights secured by the United States Constitution under the Eighth and

Fourteenth Amendments and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

*et seq.* ("Complaint Pursuant to 42 U.S.C. § 1983," Docket No. 1) (hereafter, "Complaint"). Mr.

Barbee seeks preliminary and permanent injunctive and declaratory relief, namely that this Court

---

[1] *See* Docket Entry No. 1, Appendix 1.

-1-

issue an injunction under 42 U.S.C. § 1983 directing the Defendants not to carry out Mr. Barbee's execution under conditions and procedures that will lead to severe and substantial pain as applied to him. The Court issued an "Order To Show Cause and Briefing Schedule" on November 3, 2022. (Docket Entry No. 5) Mr. Barbee filed his brief in response to that order on November 7, 2022. (Docket  Entry No. 6) and  Defendants filed their "Response In Opposition To Plaintiff Barbee's Motion For Stay of Execution With Brief In Support" on November 9, 2022 (Docket Entry No. 8). This brief is a reply to Defendants' response.

Mr. Barbee has for years been struggling with serious pain in his joints, his arms, and he has suffered a progressively more limited range of motion.  The prison has been aware of his conditions for just as long; he has filed numerous grievances in which he explained his issues and complained that his healthcare and transportation needs have been neglected.  Since July of 2021, Barbee has sought an accommodation because he anticipated that his execution would be extraordinarily painful in light of his significant physical limitations. Despite filing numerous grievances in July, September, and October of 2021, as well as march and September of 2022, he was essentially only informed "there will be no need to have his arms fully extended straight" in a four-sentence response.  (Docket Entry No. 8-2 at 4). On November 8, 2022, the prison again stated vaguely that the way he is secured "will not require him to fully extend his arms straight." (Docket Entry No. 8-3 at 4).

Critically, it was not until after he filed this lawsuit that he was given any meaningful information about a potential accommodation.  Earlier *this week*, through an affidavit dated November 7, 2022, that TDCJ filed along with their pleading opposing a stay of execution, Mr. Barbee was informed about the accommodation involving additional "padding" and adjustable" straps.  (Docket Entry No. 8-6, Affidavit of Kelly Strong). This information, entirely new to Mr.

-2-

Barbee, was only produced because he has soufght to vindicate his rights in a judicial forum, by bringing this lawsuit.  The administrative process was unavailing.  He filed his Step 2 grievance on September 9, 2022, and only received a response dated November 8, 2022, nearly a month past the 35-day period in which TDCJ has to respond. (Docket Entry No.8-3, at 4).  And that response gave no details whatsoever; only the affidavit produced for this litigation led to disclosure of the adjustable straps and extra padding.  Simply put, TDCJ was only willing to share information with Mr. Barbee when it became clear that a court may soon be looking over its shoulder.

This lawsuit has already unearthed vital but previously-undisclosed information about the execution process TDCJ plans to utilize in this case.  Whatever arguments TDCJ has made about Mr. Barbee's purported dilatoriness and motive for delay should be understood in this context. TDCJ is willing to ignore its own administrative rules, and for years it has failed to make it possible for Mr. Barbee to get the medical attention he needs. For Mr. Barbee to fear that they would be willing to make him endure extraordinary and needless pain during the execution is only rational in light of mounting evidence of institutional disregard and deliberate indifference.

**ARGUMENT**

**I. Barbee Has Not Been Dilatory**.

Mr. Barbee's lawsuit should not be dismissed because he has not engaged in dilatory behavior. However, this federal civil rights complaint cannot proceed unless the Court issues a stay of his November 16 execution date or enforces the current stay in his religious rights lawsuit, in place as of October 2021. Mr. Barbee has diligently pursued his administrative remedies and filed suit only when he had to, because TDCJ would not respond to his requests for clarification or accommodation, and his execution date—set while a stay of execution was in

place and he was pursuing spiritual advisor litigation in this Court—was fast approaching. It is only because of TDCJ's inaction—and their action in seeking and setting an execution date with federal court litigation ongoing—that Mr. Barbee requires a stay of execution in order to pursue his § 1983 claim. Because the factors that necessitate a stay of execution are within the State's control and are the direct result of TDCJ's behavior, this Court should not penalize Mr. Barbee by dismissing his suit for dilatoriness. Rather, his claims should be allowed to proceed.

Mr. Barbee has struggled with joint pain and suffered a progressively more limited range of motion in his arms. The prison authorities have been aware of his condition for as long as he has been in their custody; he also has filed numerous grievances in which he brought these issues to their attention and complained that his medical needs were being ignored or neglected. (Docket Entry No. 1, Appx. 2). The timing of Mr. Barbee's lawsuit did not disadvantage TDCJ in its ability to respond to his reasonable requests for accommodations that would reduce the risk of extreme pain or torture. Since July 2021, Barbee has diligently sought such accommodations, because he anticipated that his execution would be extraordinarily painful in light of his significant physical limitations and disability. (Docket Entry No. 1, Appx. 8). But TDCJ stymied his efforts to resolve this dispute through an administrative grievance process. Their initial response stated that "there will be no need to have his arms fully extended straight." (Docket Entry No. 8-2 at 4). On November 8, 2022, the prison again stated vaguely that the way he is secured to the gurney "will not require him to fully extend his arms straight." (Docket Entry No. 8-3 at 4).

Earlier this week, through an affidavit dated November 7, 2022 that TDCJ filed along with a pleading in response to his Motion for a Stay, Mr. Barbee was informed for the first time about the accommodation involving additional "padding" and "adjustable" straps. (Docket Entry

-4-

No. 8-6 at 2, Affidavit of Kelly Strong, Senior Warden of the Huntsville Unit). This information, entirely new to Mr. Barbee, and produced less than ten days before his scheduled execution, was only obtained because Barbee filed this federal civil rights lawsuit. To dismiss the case now would unjustly deprive Mr. Barbee of the only channel for securing information about how TDCJ plans to accommodate his disability and prevent his execution from being extraordinarily painful and torturous. To allow the civil lawsuit to proceed would at least enable Mr. Barbee to assess whether the proffered accommodations revealed in the late-breaking affidavit adequately address his Eighth Amendment concerns and meet the requirements of the Americans With Disabilities Act.

The administrative process that Barbee diligently pursued was unavailing. He filed his most recent Step 2 grievance on September 9, 2022 and did not get a response until November 8, 2022, nearly a month after the 35-day period in which TDCJ is required to respond had expired. (Docket Entry No. 8-3 at 4). TDCJ's response lacked detail about what accommodation would be provided; only the affidavit produced for this litigation led to the disclosure that TDCJ intends to accommodate Mr. Barbee's disability using some combination of adjustable straps and extra padding. (Docket Entry No. 8-6 at 2). TDCJ's behavior in failing to respond to the administrative grievances shows a clear motive to evade court review; this is evidenced by the fact that they were only willing to share information with Mr. Barbee when they had to file a responsive pleading in this Court. This is in spite of the fact that the warden's affidavit indicates that TDCJ is aware that they will have to offer some sort of accommodation to Mr. Barbee, and his execution is scheduled to take place inside of a week. Plainly, it is TDCJ and not Barbee whose dilatoriness has disadvantaged the court and the parties in seeking a timely resolution of this dispute. But Barbee has no way of knowing whether these accommodations suffice at all; nor

does his counsel. He only received information about them two days ago. For this reason, the lawsuit should be allowed to proceed.

Finally, TDCJ's response also has to be understood in light of their institutional role as the correctional facility responsible for Mr. Barbee's medical care and conditions of confinement. For many years, TDCJ has disregarded Mr. Barbee's legitimate and compelling health care needs and restricted or denied his access to medical care and necessary treatment that could have alleviated his suffering and slowed or stalled the progression of his disability. (*See* Docket Entry No. 1, Appx. 2, prison medical records of Mr. Barbee). But they failed to make it possible for Mr. Barbee to get the medical attention he needed. For the same institutional actors to now refuse to provide a reasonable accommodation and to ensure that he does not endure extraordinary and needless pain during his execution constitutes double punishment and threatens serious infringement upon Barbee's constitutional and statutory rights.

In sum, this lawsuit is not motivated by a desire to seek delay; rather, he has assiduously attempted to exhaust his administrative remedies and sought relief through the courts after multiple attempts went unanswered and those remedies proved unavailing. His behavior in seeking accommodations for his disability has not been dilatory, and his motivation in filing his § 1983 lawsuit was not to delay his execution, but to prepare for it. The State has stonewalled and prevaricated at every turn. The Court should not dismiss the lawsuit.

## II. The Equities Favor Barbee.

### A. Standard of Review.

Initially, TDCJ cites several federal habeas corpus cases as relevant to the standard of review. (Docket Entry No. 8 at 26-28). *Barefoot v. Estelle*, 463 U.S. 880 (1983); *Herrera v. Collins*, 506 U.S. 390 (1993) and *Calderon v. Thompson*, 523 U.S. 538 (1998) outline in broad

terms the required showing for a stay in the federal habeas context, the costs of federal habeas review, and the State's legitimate interest in punishing the guilty. (Docket Entry No. 8 at 27). Yet this is not a habeas action and they are not relevant to the standard of review here.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). As mentioned in Mr. Barbee's motion for a stay, as to the last factor in *Landis v. North American Co.* 299 U.S. 248, 254-255 (1936) courts frequently grant stays when the resolution of another action may "bear upon the case," because a stay is most "efficient for [the court's] own docket and the fairest course for the parties [.]" *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d. 857, 863 (9th Cir. 1979). Mr. Barbee's RLUIPA action is still pending in this Court. *Barbee v. Collier et al*, No. 4:21-cv-03077 and this Court has issued an injunction in that matter. Resolution of that action could affect the constitutionality of Mr. Barbee's upcoming execution in regard to his religious rights.

The factors this Court should consider with respect to Mr. Barbee's request for a stay are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and

(4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

-7-

**B. Mr. Barbee is not time-barred**.

TDCJ argues that Barbee's claims are time-barred because they are subject to Texas's two-year personal injury statute of limitations. (Docket Entry No. 8 at 28-30).They argue that the statute of limitations on Barbee's Eighth Amendment claim began to run when the State's execution protocol changed on July 9, 2012 and expired on July 9, 2014. With respect to the ADA claim, Defendants argue that the statute of limitations began to run when Barbee became aware of his disability. For the reasons set forth below, neither of these interpretations of the relevant statutes of limitations are applicable here.

**i. Mr. Barbee's Eighth Amendment Challenge is Timely**

Mr. Barbee's Eighth Amendment challenge is timely. TDCJ asserts that a two-year statute of limitations applies to § 1983 challenges and that this statute of limitations began running when TDCJ's execution protocol changed on July 9, 2012. But Barbee's Eighth Amendment challenge did not become ripe until his execution date was set on August 12, 2022. He has diligently pursued exhaustion of remedies and filed his lawsuit only, as explained above, when his efforts to get TDCJ to tell him how they planned to execute him when his arms could not be extended with his palms facing up were repeatedly ignored. Furthermore, his condition is degenerative. Although TDCJ claims that Barbee should have brought his suit in 2012 (Docket Entry No. 8 at 29), or even earlier, when his range-of-motion and arm immobility problems first became apparent, the fact is that his condition has deteriorated and gets worse with time and age. The first statute of limitations the State tries to apply—which says that Barbee should have filed suit after his conviction and sentence became final on direct review, or on the date that a change in TDCJ's execution protocol took effect—is inapplicable here, because Barbee is asserting an as-applied challenge to the method of execution, not a challenge to the method of execution

itself.  The 2012 change in protocol from manufactured to compounded phenobarbital in issue in *Sells v. Livingston*, 750 F.3d 478, 480-481 (5th Cir. 2014) is not relevant here, as this action does not challenge the lethal injection method of execution.

The second—the date of onset of his mobility issues—is irrelevant, because Mr. Barbee's condition when he first began to suffer from the multitude of health issues that have contributed to his disability is so materially different from his present-day condition, which is what impacts his ability to participate in the execution protocol that the State requires, including his ability to lie with his arms outstretched, palms facing upward. His claim was ripe when the State set his execution date on August 12, 2022, and he has been attempting to take proactive measures since that date (even before) to exhaust his administrative remedies and to notify TDCJ—to the extent they were not already on notice—about his need for accommodations in the execution chamber, ever since.

### ii. Mr. Barbee's ADA Claim is Timely

Finally, TDCJ's assertion that Mr. Barbee's ADA complaint is time-barred fails, because Mr. Barbee's complaint is not subject to the State's two-year personal injury statute of limitations. The analogy to personal-injury tort litigation claims, which the court relied upon in *Frame v. City of Arlington*, 657 F.3d 215, 237, (5th Cir. 211), (Docket Entry No. 8 at 30) is inapposite here, where the requested accommodation is for a one-time idiosyncratic event (an execution), after which the person requesting the accommodation will no longer be alive. Furthermore, even if Texas's two-year personal injury statute of limitation does apply, his complaint is not time-barred because

the particular accrual date of a federal cause of action is a matter of federal law. . . the rule is that accrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.' In other words, accrual occurs 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'

*Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011).

As explained above,  even though Mr. Barbee was aware of his own health condition and physical limitations for years, he lacked sufficient information to bring his ADA claim in the federal district court until an execution date had been set. He then sought to obtain information about the modifications to the execution protocol that would be implemented in light of his disability, so that he could ascertain whether his arm immobility and range-of-motion impairments would subject him to intolerable pain; this information was not forthcoming, due to the TDCJ's intransigence in responding to his administrative grievances. Thus, his ADA claim is not time-barred although he did not bring it at the onset of his disabling health condition, because he did not have a complete and present cause of action at the time.

### C. Exhaustion of Remedies.

TDCJ's recent filings themselves show that exhaustion of remedies would have been futile or impossible here. As a direct result of this lawsuit being filed, TDCJ has, in their response in opposition to Barbee's motion for a stay, now revealed that the Step 2 grievance was returned only on November 8, 2022, *one day prior to TDCJ's filing of the opposition to the motion for a stay*. (Docket Entry No.8-3, at 4). There, it was revealed for the first time that

An investigation has been conducted by the Central Grievance Office. During his execution, TDCJ will secure Mr. Barbee on the gurney in a manner that will not require him to fully extend his arms straight. Therefore, he will not suffer any extreme pain. No further action is required at this time.
(Signature illegible)

-10-

Additionally, in another exhibit in TDCJ's opposition to the stay (Docket Entry No. 8-2 at 4), they have revealed that Mr. Barbee's Step 1 Grievance submitted on March 17, 2022, was returned *almost six months later*, on September 6, 2022, with the answer that "in response to his claim, there will be no need to have his arms fully extended straight. Based on this, Mr. Barbee will not suffer any extreme pain." (Signed by A.W. Enriques)[2]

With a grievance response of almost six months in one case and another almost two months and well after the complaint was filed, TDCJ themselves have supplied the answer to any question regarding non-exhaustion: exhaustion would have been either futile or impossible. Had Mr. Barbee waited for the return of his Step 2 grievance, it would have been too late.

In *Ramirez v. Collier*, 142 S. Ct. 1264 (2022), a religious rights lawsuit, Mr. Ramirez faced hurdles similar to those Mr. Barbee faced in regard to his physical disabilities grievances. Mr. Ramirez, like Mr. Barbee, "sought to vindicate his rights for months," *Ramirez* at 1283, but prison officials were slow to respond. The Supreme Court held that "respondents can hardly complain about the inequities of delay when their own actions were a significant contributing factor." *Id.*

*Ross v. Blake*, 578 U.S. 632, 642 (2016) held that an inmate must only exhaust available remedies, not unavailable ones (citing 42 U.S.C. § 1997e(a)). The Supreme Court identified three situations in which an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently

---

[2] Barbee's counsel did not have the return of this Step 1 grievance when he filed his complaint; it may have not been sent to counsel; lost in the mail; or otherwise unavailable. However, it is hardly "unfavorable to his case" as Defendants aver in their opposition to the stay. (Docket Entry No. 8 at 32). To the contrary, it shows a nearly six-month delay in responding to this grievance.

unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Exceptions 1 and 3 apply here to exempt Mr. Barbee from exhaustion requirements

      Mr. Barbee also notes that he has explained in his brief that:

      (1) exhaustion of administrative remedies is an affirmative defense that does not need to be pled in the complaint and an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the Defendants have the burden to plead and prove by a preponderance of the evidence,

      (2) that "[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Jones v. Bock*, 549 U.S. 199, 216 (2007) (noting "that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). (*See* Docket Entry No. 6 at 12-14). He re-urges those arguments here.

### D. Mr. Barbee has made a strong showing he is likely to succeed on the merits

### i. Eighth Amendment Claim

      Mr. Barbee has made a strong showing he is likely to succeed on the merits of his Eighth Amendment claim. To succeed on the claim, he must show that the execution presents a risk of severe pain that is "sure or very likely to cause serious illness and needless suffering" and gives rise to "sufficiently imminent dangers," such that prison officials cannot later plead "that they were subjectively blameless." *Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (internal citations omitted). The expert and medical evidence submitted at this stage exclusively support his

allegations. Were his lethal injection to be conducted like the hundreds Texas has performed before—with the prisoner's arms strapped down to the gurney—there is little doubt that he would experience "superadd[ed]" pain. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019). With respect to the accommodations that TDCJ has placed in the "substantial discretion" of the prison staff (Docket Entry No. 8 at 36), it is crucial to bear in mind that the staff's goal is to ensure Mr. Barbee is executed. While the exercise of discretion could help avoid the infliction of needless suffering upon Barbee, there are legitimate reasons to ask what staff will do if and when there is a tradeoff between averting needless suffering and assuring the execution occurs. Under these circumstances, there is "substantial risk of serious harm." *Baze*, 553 U.S. at 50 (internal quotation and citation omitted).

This point is particularly important given TDCJ's acknowledgement that an accommodation permitting Mr. Barbee to keep his arms bent will make it difficult to access veins in the crook of his arms. (Docket Entry 8-6 at 2, Affidavit of Kelly Strong, Senior Warden of the Huntsville Unit). While TDCJ submitted a laundry list of executions (Docket Entry 8-4), it ignores the reality that finding suitable veins for injection often creates substantial challenges. In 1998, the State struggled to execute Joseph Cannon: "It took two attempts to complete the execution. . . . A vein in Cannon's arm collapsed and the needle popped out." BOTCHED EXECUTIONS, DEATH PENALTY INFO. CTR., *available at* https://deathpenaltyinfo.org/executions/botched-executions (last visited Nov. 11, 2022). Later that year, the execution of Genaro Ruiz Camacho "was delayed approximately two hours due, in part, to problems finding suitable veins in Camacho's arms." *See id.* The historical record indicates that there is a serious risk accompanying the purported accommodation, and this risk further justifies the discovery (and scrutiny) this lawsuit seeks to accomplish.

-13-

TDCJ's review of lethal injection cases and its characterization of the history of prior executions is not illuminating at all because Barbee does not challenge lethal injection as a method of execution. And, his challenge is as-applied, based on his unique circumstances.

**ii. ADA Claim**

Mr. Barbee has made a strong showing he is likely to succeed on the merits of his ADA claim. TDCJ does not meaningfully contest that Mr. Barbee has physical impairments that substantially limit several major life activities. (*See* Docket Entry No. 8 at 23). He thus qualifies as an individual with a disability under the ADA. TDCJ does not engage this issue, other than to say that medical evaluations do not specifically state he qualifies under the ADA. That, however, is not the relevant legal requirement. *See* 42 U.S.C. § 12102 (definition of disability).

TDCJ argues that there is a distinction between them knowing about his disability and them knowing about his limitations. This argument has no force. Mr. Barbee framed his grievances and this lawsuit around his limitations, not his disability. It is his limited range of motion—his severe arm immobility—that creates the potential for undue pain during the execution process. Whatever the names or causes of the conditions—"degenerative osteoarthritis," "joint pain," or "cervicalgia"—what Mr. Barbee has articulated is that forcibly moving and restraining his arms past their limited range of motion will result in torturous and needless pain.

Most importantly, it is un-refuted that the "failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Tex. Dep't of Criminal Justice*, C.A. No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006); *see also Streater v. Davis*, No. 5:19-

-14-

CV-00263-H, 2021 WL 5768849, at *13 (N.D. Tex. Dec. 6, 2021), *appeal dismissed*, No. 21-11253, 2022 WL 10362714 (5th Cir. Oct. 18, 2022). And, it is unrefuted that the traditional method of execution, which involves securing the prisoner to the gurney, would cause him significantly more pain than a non-disabled prisoner.

TDCJ's pleading actually increases the likelihood that Mr. Barbee will prevail on his ADA claim because it demonstrates that they have not collaborated with him or his counsel on how to make a reasonable accommodation. Once an agency has been put on notice of an individual's need for an accommodation, the ADA obligates both parties to engage in a good faith interactive process to develop a reasonable accommodation. *See, e.g.*, *Picard v. St. Tammany Par. Hosp.*, 611 F. Supp. 2d 608, 621 (E.D. La. 2009); *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007). Here, there is no evidence indicating that TDCJ has made a good faith effort to work with Mr. Barbee on addressing his legitimate concerns. Indeed, the Step-2 grievance response was provided on November 8, 2022, a mere three days ago. (See Exh. 2 on TDCJ Brief on Stay Motion.) TDCJ has not communicated with counsel or Mr. Barbee about what the accommodation could look like, instead directing them to the grievance process and, until earlier this week, only stating "there will be no need to have his arms fully extended straight." (See Exh. 1 on TDCJ Brief on Stay Motion.) The process has been anything but a "good faith interactive" one. That signals there may be an ADA violation in this case. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) ("Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.").

-15-

### E. Mr. Barbee will suffer irreparable injury absent a stay of execution

TDCJ is right that Mr. Barbee is not challenging his execution in this lawsuit. Instead, he alleges that the execution will unconstitutionally super-add pain to the process and TDCJ has failed to provide him with a reasonable accommodation as required by the ADA. Rather than engage with the evidence Mr. Barbee has supplied about his particular medical circumstances, TDCJ touts its record and states that Barbee "identifies no similarly situated Texas inmate . . . ." (Docket Entry No. 8 at 43). That is precisely the point of this as-applied challenge: Mr. Barbee suffers from unique physical limitations that TDCJ has not yet dealt with in an execution context. While TDCJ apparently suggests that he needs to point to a roster of botched executions to demonstrate the risk of irreparable injury, Mr. Barbee contends that the evidence supplied in the Complaint and his request for a stay suffices.

### F. The public interest in the punishment does not outweigh the public interest in avoiding an unconstitutional execution.

The public has a strong interest in preventing unconstitutional and needlessly painful executions. *Cf. Bucklew*, 139 S .Ct. at 1125 (describing efforts to make executions more humane prompted by "the initiative of the people"). While the State and the public have a valid interest in the enforcement of Mr. Barbee's sentence, the grave risk of substantial and needless harm lessens its weight. Under the circumstances—where the only medical evidence submitted points to a likelihood of extraordinary pain—the public interest in a stay outweighs the public interest in maintaining the November 16, 2022 execution date. The litigation in this case thus far has raised more questions about how Mr. Barbee's execution will proceed than it has answered, and the public interest favors a stay.

**Conclusion**

For the foregoing reasons, and given the high stakes involved, the balance of the equities weighs clearly in favor of staying Mr. Barbee's execution.

DATED: November 11, 2022.

Respectfully submitted,

*s/s A. Richard Ellis*
A.  Richard Ellis
Texas Bar No. 06560400
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
FAX (415) 389-0251
a.r.ellis@att.net

## CERTIFICATE OF ELECTRONIC SERVICE

I, A. Richard Ellis, do hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court on November 11, 2022.   The Court's electronic case filing system has notified Defendants' counsel of record.

_/s/ A. Richard Ellis_
 A.  RICHARD ELLIS
Attorney for Plaintiff Stephen Barbee
 Texas Bar No. 06560400
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
FAX (415) 389-0251
a.r.ellis@att.net