Case 4:22-cv-03684   Document 12   Filed on 11/15/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
November 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BARBEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-03684 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The State of Texas has set Stephen Barbee's execution for November 16, 2022. On October 25, 2022, Barbee filed this lawsuit under 42 U.S.C. § 1983 seeking injunctive and declaratory relief. Barbie also moves to stay his execution. (Docket Entry No. 4). Barbee sues three defendants in their official capacity as representatives of the Texas Department of Criminal Justice (TDCJ). For the reasons discussed below, the Court **DENIES** Barbee's motion for a stay and **DISMISSES** this case.

### BACKGROUND

In February 2006, a jury convicted Barbee of capital murder for killing Lisa Underwood and her seven-year-old son, Jayden Underwood, during the same criminal transaction. *See Barbee v. State*, 2008 WL 5160202, at *1 (Tex. Crim. App. 2008) (describing the facts of the offense). The prosecution presented evidence, including Barbee's confession to the police, proving that he violently beat and asphyxiated both

victims. A jury answered Texas' special issue questions in a manner requiring the imposition of a death sentence.

Over the years, Barbee has litigated various issues in both state and federal court. This case does not concern the substantive challenges to his conviction and sentence.

Facing an execution date in 2021, Barbee filed a federal civil rights complaint challenging Texas' policy regarding access to spiritual advisors in the execution chamber. *Barbee v. Collier*, 4:21-cv-3077 (S.D. Tex.). This Court ultimately stayed Barbee's execution to preserve his religious rights. *Barbee v. Collier*, 4:21-cv-3077 (S.D. Tex.), Docket Entry No. 14.[1]

On August 12, 2022, a state district court scheduled Barbee's execution. The state court set the execution date for slightly more than the ninety-one days allowed by statute. Tex. Code Crim. Pro. Ann., Art. 43.141(c). Barbee filed this lawsuit only twenty-two days before his scheduled execution. Barbee's complaint stems from long-standing difficulties with mobility in his arms. As early as 2006, prison doctors observed that Barbee was "unable to raise arms . . . w/o pain, numbness to arms."[2] Barbee's complaint alleges that over the past decade and a half he has experienced increased pain and decreased mobility in his arms. Barbee is now allegedly unable to straighten out his arms.

---

[1] The Court's Order contained specific language: "The State may not carry out Barbee's execution until the State allows his chosen spiritual advisor in the execution chamber, authorizes contact between Barbee and his spiritual advisor, and allows his spiritual advisor to pray during the execution." *Barbee v. Collier*, 4:21-cv-3077 (S.D. Tex.), Docket Entry No. 14 at 19. TDCJ has indicated that it will allow Barbee's spiritual advisor into the execution chamber and that he may touch Barbee in the way he wishes. Nothing suggests that TDCJ will not allow his spiritual advisor to pray.

[2] Statements in quotes are references to arguments in the pleadings of the parties.

Barbee's attorneys arranged a medical examination to confirm his condition over a year ago. Dr. Pamela Blake, a board-certified neurologist, personally examined Mr. Barbee at the Polunsky Unit on September 24, 2021. Dr. Blake performed a follow-up examination on September 26, 2022. Dr. Blake concluded that "Mr. Barbee continues to exhibit a progressive medical condition that has resulted in progressive loss of range of motion in numerous joints, including the bilateral elbow and wrists, and weakness of muscles in the upper and lower extremities. The disorder is much more prominent in the proximal joints, including the bilateral elbow and wrists, and weakness of muscles in the upper and lower extremities. According to Barbee, this condition renders him unable to extend his arms in a manner that will allow his lethal injection to go forward.

Texas conducts executions in a special room in the Huntsville (Walls) Unit. A gurney sits in the center of the room. Two arm rests protrude from the body of the gurney in a cross-like shape. Barbee contends that the angle of the arms on the gurney is such that his execution could only proceed if his arms were painfully forced to extend from his body.

Texas' official execution protocol states that an inmate should be "secured to the gurney" but does not specify any particular method or procedure for doing so. No specific language describes how an inmate's arms must be placed, leaving discretion to the prison officials conducting the execution. Nevertheless, Barbee alleges that, because of "well-documented physical ailments, including arm immobility," TDCJ cannot conduct his execution "without the infliction of torture." Barbee raises two grounds for relief: (1) due to Barbee's medical conditions and arm immobility issues, attempting to execute him with

arms outstretched on the gurney would violate the Cruel and Unusual Clause of the Eighth Amendment and (2) executing Barbee without accommodations for his disabilities would be a violation of the Americans with Disabilities Act.  Barbee seeks injunctive relief and makes the following requests:

1. Issue a preliminary injunction forbidding Mr. Barbee's execution unless ameliorative measures are taken that will not require Mr. Barbee to be strapped to the gurney with his arms outstretched in a 180-degree posture.

2. A declaratory judgment that executing Mr. Barbee with arms outstretched in a 180-degree posture would violate his rights under the Eighth and Fourteenth Amendments and the ADA.

3. A preliminary and permanent injunction prohibiting Defendants from executing Mr. Barbee until they permit an alternative method of execution not requiring him to lie on the gurney with his with arms outstretched in a 180-degree posture.

Barbee also moves to stay his execution.  On November 3, 2022, the Court entered an order requiring Barbee to answer various questions.  The parties have provided briefing regarding the Court's order and other issues.

## ANALYSIS

The parties have provided preliminary briefing on various issues, including the viability of Barbee's complaint and his request for an injunction.  For the reason discussed below, the Court finds that this case is subject to dismissal.  Alternatively, the Court finds that Barbee is not entitled to injunctive relief on his claims.

## I. Dismissal

Barbee proceeds in this case as a pauper. Under 28 U.S.C. § 1915(e), the Court must screen any civil complaint to determine whether the claims presented are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. "Though the statute is silent as to whether this dismissal should be with or without prejudice, . . . cases are appropriately dismissed with prejudice when evidence exists of bad faith, manipulative tactics, or litigiousness." *Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (quotation omitted). A court also possess the inherent authority to dismiss dilatory capital litigation. In the Court's view the claims asserted, and addressed hereafter, are dilatory in nature.

### A. TDCJ's Accommodations

In his complaint, Barbee alleges that "TDCJ, despite being aware for many years of these severe physical disabilities, is acting with deliberate indifference to them and has refused to divulge whether Mr. Barbee will be executed in a manner that would amount to torture and cruel and unusual punishment in violation of the Eighth Amendment." Barbee further accuses TDCJ of "refus[ing] to divulge what, if any, ameliorative measures they may take in order to prevent this needless torture." Barbee's complaint, however, failed to disclose the fact that before he filed this lawsuit, TDCJ had already informed him that it would adjust its execution procedure to accommodate his physical concerns. A review of the history of the administrative process informs the Court's conclusions.

In March 2022, Barbee filed a Step 1 prison grievance seeking information about his execution.[3] Barbee's complaint alleges that TDCJ officials have been "indifferent to his disabilities and his multiple requests for accommodation." Curiously, Barbee attaches to his complaint only a copy of the Step 1 grievances he submitted and does not provide any answer to his request. (*Compare* Docket Entry No. 1, Exhibit 8 *with* Docket Entry No. 8, Exhibit 1). Barbee gives the impression that prison officials have completely ignored his medical concerns. In fact, Barbee's response to the show-cause order says that "[w]ith respect to the current execution date" he "timely sought to inform TDCJ officials of the deterioration of his condition. Again, his efforts met with no response." As such, Barbee created the impression that the prison system has been unresponsive to his concerns.

Moreover, the briefing filed by the defendants demonstrates that he has not provided a correct representation of the facts. The administrative record shows that on September 6, 2022, TDCJ answered Barbee's Step 1 grievance. The prison informed Barbee:

> Mr. Barbee claims he cannot extend his arms straight on the gurney with his palms up for his upcoming execution. He states that he would be [in] extreme pain or torture to place his arms straight out with palms facing up.
>
> In response to his claim, there will be no need to have his arms fully extended straight. Based on this Mr. Barbee will not suffer any extreme pain.

Hence, Barbee knew a month and a half before he filed this lawsuit that he would not face execution in the manner he alleges.

---

[3] Texas has a two-step prison grievance process. "The inmate first files a Step 1 grievance, in which he must state the grievance and his proposed relief. If relief is denied, the inmate may then file a Step 2 grievance appealing the denial." *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012). "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted." *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

Barbee now explains that he "did not have the return of this Step 1 grievance when he filed his complaint; it may have not been sent to counsel; lost in the mail; or otherwise unavailable." This excuse, notwithstanding, counsel failed to investigate sufficiently before filing this lawsuit. More importantly, Barbee, himself, knew about TDCJ's response to the Step 1 grievance. Indeed, the TDCJ inmate handbook only permits Step 2 grievances with an answered Step 1 response. *See Villanueva v. Landrum*, 2022 WL 10584644, at *2 (E.D. Tex. 2022); Tex. Dep't Crim. Just., Offender Orientation Handbook at 74 (2017), https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf ("Step 2 appeals shall be accompanied by the original, answered Step 1.").

Since filing suit, Barbee has received even more information from TDCJ. On November 8, 2022, the prison answered his Step 2 grievance:

> An investigation has been conducted by the Central Grievance Office. During his execution, TDCJ will secure Mr. Barbee on the gurney in a manner that will not require him to fully extend his arms straight. Therefore, he will not suffer any extreme pain. No further action is required at this time.

In an affidavit dated November 7, 2022, Huntsville Unit Senior Warden Kelly Strong assures that TDCJ has taken Barbee's condition into consideration when planning for his execution. He states:

> TDCJ has already notified inmate Stephen Barbee that TDCJ will accommodate his asserted limitation by not requiring his arms to be extended straight. Barbee's arms may remain bent. The leather straps that secure his arms to the arm rests are adjustable such that they may be moved closer to the body or farther, which allows for his arms to remain bent. TDCJ has made additional modifications, including adding padding to the arm rests of gurney, to accommodate Barbee's asserted limitation regarding the positioning of his arms.

> Moreover, while the crook of the elbow is the preferred location for the IV insertion during an execution, the IV lines have been inserted in other locations when a suitable vein could not be utilized in the crook of the elbow. In previous executions, an IV line has been inserted in other parts of the body. The IV team will assess the veins at the time of the execution. In Barbee's case, if his decreased range of motion in his arms prevents IV placement in the elbow, the IV team will adjust accordingly as they have done in previous executions.

TDCJ has prepared to accommodate Barbee's physical concerns and Barbee's speculations are nor factual or evidentiary.

Federal law does "not for a moment countenance 'last-minute' claims relied on to forestall an execution." *Nance v. Ward*, 142 S. Ct. 2214, 2225 (2022). Federal courts have an obligation to protect against "dilatory or speculative suits." *Hill v. McDonough*, 547 U.S. 573, 585 (2006). Federal courts may use their "equitable powers to dismiss" when an inmate files his lawsuit "too late in the day." *Id*. at 584. This Court must consider whether Barbee's lawsuit filed on the eve of his execution "constitutes a dilatory tactic and therefore warrants no equitable relief." *Bible v. Davis*, 739 F App'x 766, 770 (5th Cir. 2018); *Ramirez v. McCraw*, 715 F. App'x 347, 351 (5th Cir. 2017) (observing that, in the balance of equity, "dilatory behavior" may weigh heavily against a plaintiff). Hence, Barbee must provide a "legitimate justification as to why this appeal is anything but a delay tactic[.]" *Beatty v. Lumpkin*, ___ F.4d ____, No. 22-70010 (5th Cir. Nov. 2, 2022).

In his complaint, Barbee provided three reasons why the Court should find that he filed this lawsuit "as soon as feasibly possible": (1) the State set his execution date within the shortest amount of time available under Texas state law; (2) he "has been without appointed counsel since early 2019, except for clemency proceedings"; and (3) TDCJ has

8 / 14

not been forthcoming with information about the execution process. These arguments do not justify his tardiness in filing this lawsuit.

Texas law specifies that "[a]n execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date." Tex. Code Crim. Proc. Ann. art. 43.141(c). Based on the facts, Barbee could have brought this action long before any execution date was set—possibly even years before. *See Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015).[4]

Barbee counters that he could not have filed his lawsuit sooner because he "has been without appointed counsel since early 2019, except for clemency proceedings." The Court ordered Barbee to "explain how this argument is in keeping with his duty of candor to the Court." In his response to the show-cause order, Barbee explains that his federally appointed counsel has not been authorized to represent him in state court. Barbee also states that, even though he has filed civil-rights actions, he does not believe that counsel will be compensated for those efforts.

The question is not whether Barbee's current attorneys are authorized to represent him in state court, or whether he will be compensated for his civil-rights lawsuits.[5] The

---

[4] Barbee, in fact, filed a similar lawsuit in state court before his October 2021 execution date. *Ex parte Barbee*, 2021 WL 4713629, at *1 (Tex. Crim. App. 2021).

[5] Whether or not the appointing court will reimburse Mr. Ellis for his work on this case is a separate matter. While the Fifth Circuit has not yet addressed the issue, other circuits have authorized attorneys appointed under section 3599 to be reimbursed for their work on section 1983 cases. *See Banks v. Secretary, Florida Dept. of Corrections*, 647 F. App'x 910, 913 n.4 (11th Cir. 2016); *Hooper v. Jones*, 536 F. App'x 796, 799 (10th Cir. 2013). In particular, circuit courts have authorized reimbursement for civil-rights cases which necessarily request a stay of execution. *See Banks*, 647 F. App'x at 913 n.4 (finding that section 3599's specific language overrides any other policy which may discourage reimbursement for a civil-rights case seeking a stay of execution). Whether the appointing court reimburses him or not, Mr. Ellis has a continuing obligation to represent Barbee beyond merely filing a clemency petition.

question is whether Barbee truly "has been without appointed counsel since early 2019, except for clemency proceedings." The record shows that the United States District Court for the Northern District of Texas appointed A. Richard Ellis under 18 U.S.C. § 3599 to represent Barbee on May 13, 2009. *Barbee v. Davis*, 4:09-cv-00074-Y (N.D. Tex.). The record does not indicate that the Northern District of Texas has removed counsel from his duty to represent Barbee. *See Wilkins v. Davis*, 832 F.3d 547, 557-58 (5th Cir. 2016). Appointment under section 3599 continues "throughout every subsequent stage of available judicial proceedings," including "applications for stays of execution and other appropriate motions and procedures." Counsel, therefore, unquestionably still represents Barbee in matters beyond clemency as the record in this case establishes.

Finally, Barbee argues that he lacked adequate information to file this lawsuit. Barbee asserts that "[f]or well over a year [he] has sought information about the plans for his execution, whether he will be forced to lie on the gurney with arms straight and palms up, which would amount to torture, yet TDCJ has refused to supply any information as to the conditions and plans for his execution. Hence, this lawsuit is being presented as soon as feasibly possible. TDCJ's delay in providing this information has resulted in this action." This is not the case, as a record reveals otherwise. There is no basis for this complaint here. *See Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (citation omitted). This suit is subject to dismissal on this basis alone.

## II.     Stay of Execution/Preliminary Injunction

Barbee has asked the Court to stay his execution. "[A] stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course." *Hill*, 547 U.S. at 583-84. In deciding whether to issue a stay of execution, a court must consider: (1) whether the inmate has made a strong showing that he is likely to succeed on the merits; (2) whether the inmate will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken*, 556 U.S. at 425-26. "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S at 584.

Barbee filed suit under a novel claim that the Americans With Disabilities Act precludes his execution. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under § 12132, a plaintiff generally must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*See Feist v. La, Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Barbee cannot establish that he is a "qualified individual" under the statute. The ADA defines a "disability" as "a physical or *mental impairment* that substantially limits one or more major life activities . . . ." § 12102(1)(A) (emphasis added). The term "disability" is to be construed broadly. *Id.* at § 12102(4)(A). However, the statute cannot be construed to reach areas never intended. Counsel for Barbee has failed to cite to any authority that even suggests that Congress intended the ADA to apply to illness, disabilities and the like in death cases.[6]

The defendants argues that Barbee has filed this suit outside the time allowed by the statute of limitations.[7] Claims brought under the ADA are also subject to a state's personal injury statute of limitations. *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011). Texas has a two-year Texas personal-injury limitations period for claims under Title II of the ADA. *See id.*; *Piotrowski v. City of Houston*, 51 F.3d 512, 515 n.5 (5th Cir. 1995) (finding that Texas's two-year statute of limitations for personal injury actions applies to § 1983 claims). However, the Court does not need to address this defense because, in the Court's view, no cause of action can be asserted.

---

[6] Barbee complains that "it was not until after he filed this lawsuit that he was given any meaningful information about a potential accommodation." (Docket Entry No. 10 at 2). But Barbee's failure to include in his complaint the resolution of his Step 1 grievance suggests that he himself is at fault for not becoming aware of the facts before filing suit.

[7] "There is no federal statute of limitations for claims brought under § 1983. Instead, federal courts borrow the forum state's statute of limitations for personal injury actions, as well as the state's tolling provisions." *Bohannan v. Doe*, 527 F. App'x 283, 293 (5th Cir. 2013) (citations omitted). A claim accrues when an inmate has a complete cause of action—when he can file suit and obtain relief. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[U]nder federal law, a claim accrues the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Bohannan*, 527 F. App'x at 293.

Because Barbee cannot establish an element of a claim he asserts, accommodation under the ADA, there is no likelihood that he will succeed on the merits of his claim. The Eighth Amendment prohibits execution procedures that inflict cruel and unusual punishment. *See Baze v. Rees*, 553 U.S. 35 (2008). Yet the "the Eighth Amendment does not guarantee a prisoner a painless death—something that, of course, isn't guaranteed to many people, including most victims of capital crimes." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019). Thus, to make an Eighth Amendment claim prisoners facing execution must demonstrate "a 'substantial risk of serious harm,'" or "an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they [are] 'subjectively blameless for purposes of the Eighth Amendment.'" *Baze*, 553 U.S. at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846, & n. 9 (1994); *see also Glossip v. Gross*, 576 U.S. 863, 877-78 (2015). In the context of this execution event, Barbee cannot show that his execution creates "a risk that is 'sure or very likely to cause serious illness and needless suffering,' and that gives rise to 'sufficiently *imminent* dangers.'" *Glossip*, 576 U.S. at 877 (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). Speculation about possible concerns, is no evidence.

Again, the defendants argue that Barbee filed his Eighth Amendment claim outside of the relevant statute of limitations. The Court need not address the defendants' argument since Barbee's own pleadings demonstrate that he has known about his own physical problems for years and could have filed this lawsuit long before the eve of his execution. As with his ADA claim, Barbee has failed to make a strong showing that he is likely to

succeed on his Eighth Amendment claim. Therefore, no stay of execution is warranted, and this suit is dismissed as unmeritorious and dilatory.

## CONCLUSION

The Court **GRANTS** Barbee's pending motion to proceed *in forma pauperis*; **GRANTS** Barbee's request for his counsel to appear *pro hac vice*; and **DENIES** Barbee's request for a stay of his execution. The Court, therefore, **DISMISSES** this case **WITH PREJUDICE**.

It is so ORDERED.

SIGNED on November 15, 2022, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge